Kirk B. Lenhard
(Nevada Bar No. 1437)
John P. Desmond
(Nevada Bar No. 5618)
JONES VARGAS
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89169
Telephone: (702) 862-3300
Facsimile: (702) 737-7705
E-Mail: kbl@jonesvargas.com

Daniel A. O'Brien (P42120)
Admitted pro hac vice
1060 E. West Maple Rd.
Walled Lake, MI 48390
Telephone: (248) 669-7281
Facsimile: (248) 669-9840
E-mail: obrienlegal@ryanandschouman.com

Attorneys for Anonymous Online Speakers

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| QUIXTAR, INC., | Case No. 3:07-cv-00505-ECR-(RAM) |
| Plaintiff, | Hon. Edward C. Reed, Jr. |
| vs. | Mag. Judge Robert A. McQuaid, Jr. |
| SIGNATURE MANAGEMENT TEAM, LLC, d/b/a TEAM, APOLLO WORKS HOLDINGS, INC., GREEN GEMINI ENTERPRISES, INC., NORTH STAR SOLUTIONS, INC., NORTHERN LIGHTS SERVICES, INC., SUNSET RESOURCES, INC., and SKY SCOPE TEAM, INC., | |
| Defendants | |

**ANONYMOUS ONLINE SPEAKERS'
OBJECTION TO MAGISTRATE JUDGE'S RULING**

## TABLE OF CONTENTS

| Section | Page |
|---|---|
| **BACKGROUND** | 1 |
| I. The Anonymous Online Statements | 1 |
|    A. HAM Phones Alticor's Mike Mohr – Anonymous YouTube Video | 1 |
|    B. SaveUsDickDeVos – Anonymous Blog | 2 |
| II. The Magistrate Judge's Order | 3 |
| **ARGUMENT** | 4 |
| **The Identities of the Two Speakers Are Protected From Disclosure by the First Amendment** | 4 |
|    A. The District Court's July Order | 4 |
|    B. The Magistrate Judge's Order Was Clearly Erroneous and Contrary to Law | 5 |
|       1. The "Improper Act" Element of Tortious Interference | 6 |
|          a. SaveUsDickDeVos Blog | 6 |
|          b. HAM Video | 6 |
|       2. The Causation Element of Tortious Interference | 7 |
| **CONCLUSION** | 8 |

## TABLE OF AUTHORITIES

**Case Law**                                                                                                **Pages**

*Amway Corp. v. Proctor & Gamble Co.*, No. 1:98-CV-726 U.S. Dist.
   LEXIS 14455 at 9 (W.D. Mich. September 14, 2001),
   *aff'd* 346 F.3d 180, 185, n.7 (6th Cir. 2003)..................................8

*Dendrite International, Inc. v. Doe No. 3*,
   775 A.2d 756, 771 (N.J. Super. A.D. 2001)...................................5

*Derderian v. Genesys Health Care Systems*,
   263 Mich. App. 364, 382 (2004)...................................7

*Doe v. Cahill*, 884 A.2d 451 (Del. 2005)...................................1, 4-9

*Garvelink v. Detroit News*, 206 Mich. App. 604, 610 (1994)...................................7

*Global Telemedia Int'l, Inc., v. Doe 1*,
   132 F. Supp. 2d 1261, 1264 (C.D. Cal. 2001)...................................7

*Greenbelt Cooperative Publishing Ass'n, v. Bresler*,
   398 U.S. 6, 13-14 (1970)...................................7

*Highfields Capital Mgmt. v. Doe*, 385 F. Supp. 2d 969, 970 (2005)...................................5

*Krinsky v. Doe*, 2008 Cal. App. LEXIS 180 (2008)...................................5

*Lakeshore Community Hosp. v. Perry*, 212 Mich. App. 396, 402 (1995)...................................5

*Mino v. Clio Sch. Dist.*, 255 Mich. App. 60, 78 (2003)...................................8

*P.T. Today, Inc. v. Comm'r of the Office of Fin. & Ins. Servs.*,
   270 Mich. App. 110, 151 (2006)...................................8

**Other Authorities**                                                                                      **Pages**

Local Rule IB 3-1...................................1

FRCP 72(a)...................................1

28 U.S.C. 636(b)(1)(A)...................................1

Non-Party Anonymous Online Speakers "SaveUsDickDeVos" and "Hooded Angry Man" ("HAM"; collectively, "Anonymous Online Speakers") object to Magistrate Judge Robert A. McQuaid, Jr.'s November 12, 2008, minute order (Dkt. No. 261) compelling the disclosure of their identities. The ruling is clearly erroneous and contrary to law because their online statements are opinion, parody, hyperbole or fair comment and are therefore protected by First Amendment freedoms of speech and association. Pursuant to Local Rule IB 3-1, Federal Rule of Civil Procedure 72(a), and 28 U.S.C. 636(b)(1)(A), the Anonymous Online Speakers respectfully object, submit these supporting points and authorities, and request that this portion of the minute order be reversed.

## BACKGROUND

On remand from the District Court to apply the standard set forth in *Doe v. Cahill*, 884 A.2d 451 (Del. 2005), the Magistrate Judge ordered that the identities of two anonymous online speakers be revealed to Plaintiff Quixtar, Inc.[1] (Dkt. No. 261.) While Quixtar claims that the speakers' statements are defamatory and therefore satisfy the "improper act" element of its tortious interference claims against Defendant Signature Management Team, LLC, ("Team"), Quixtar is expected to pursue separate actions against these individual speakers too.[2]

I.   **The Anonymous Online Statements**

A.   **HAM Phones Alticor's Mike Mohr – Anonymous YouTube Video**

HAM's introductory video can be found at this link, and the Magistrate Judge viewed it online in the courtroom: http://www.youtube.com/watch?v=kC7NiVKEeMk.[3] The video depicts the outline of a figure dressed in a hooded sweatshirt, with the hood's drawstrings cinched so tightly around his face that only the nose is exposed. A paper "Quixtar" sign is pinned to his sweatshirt below the printed words "Property of". HAM gestures wildly and speaks in a comical voice, quoting Quixtar's allegations that former Quixtar IBOs stole

---

[1] The Magistrate Judge found that the other statements identified by Quixtar were insufficient to compel disclosure of the speakers' identities.

[2] In fact, Quixtar has already filed an action in Michigan against more than twenty anonymous online speakers, including SaveUsDickDeVos and HAM, to discover their identities and seek damages from them individually.

[3] Counsel for the Anonymous Online Speakers is copying the videos onto a DVD to be submitted to the Court.

- 1 -

Quixtar's confidential trade secrets. Switching to a high-pitched voice, HAM then responds to the allegations, sarcastically explaining the allegedly stolen "trade secrets". *Id.* at 0:58 *et seq.* The video closes with HAM describing what he thinks a "pharaoh" will do to those who climb to the top of the pharaoh's pyramid.

Quixtar complains about certain statements in a follow-up HAM video, which can be found at this link and which the Magistrate Judge also viewed in the courtroom: http://www.youtube.com/watch?v=pfjVHCtNMQQ. The video is billed as offering the viewer a chance to "listen in" as HAM "calls" Mike Mohr, the Vice President and General Counsel at a related Quixtar company, Alticor. The telephone call is a fictional conversation between Homer Simpson (shouting "doh!") and Neo (played by Keanu Reeves) from "The Matrix" movies. The mixing of the voice tracks indicates that Neo represents HAM and Homer Simpson represents Mike Mohr. After the conversation, the text on the screen states "Ladies and Gentlemen, I present to you the DEADLY SINS of Alticor/Amway/Quixtar!", a list of which scroll up the screen to the sound of bagpipes and the theme from the "Braveheart" movie. The allegedly tortious statements appear in the list, and many of the "DEADLY SINS" contain spelling, punctuation and grammar errors. The video closes with the song "Hit the Road, Jack," and a quote from Ronald Reagan. The video was posted on February 2, 2008, over three months *after* Quixtar filed its complaint in this action. (Dkt. No. 1.)

B.   **SaveUsDickDeVos – Anonymous Blog**

The allegedly tortious statement appears on the blog at this link, which the Magistrate Judge viewed in print: http://saveusdickdevos.blogspot.com/2007/10/mike-mohrs-clown-act.html. (Ex. J to Dkt. No. 194.) Dick DeVos is the one of the heads of Quixtar/Alticor companies, who also campaigned for Michigan governor in 2006. The blog's introduction states that it is "a plea to the DeVos and VanAndel families to prevent the destruction of Dick [DeVos's Michigan] Gubernatorial and perhaps Presidential chances" due to the havoc caused by Quixtar's attorneys. *Id.* The blogger calls himself "Sam Adams" and begins his post by addressing Mr. DeVos directly. He states that a friend recommended that the

blogger view another website, on which the blogger "glumly read" what follows. The blogger then literally cuts and pastes the text from that website onto his blog. The blogger closes by stating that the quoted statements from the website "sound truthful to me" and that he agrees with the statements, and asking Mr. DeVos why he will not "just let these people go?" *Id.* The posting is dated October 31, 2007, again *after* Quixtar filed its complaint in this action. (Dkt. No. 1.)

Quixtar claims that four statements from these two sources caused Quixtar IBOs to leave Quixtar, constituting tortious interference with a contract and tortious interference with an advantageous business expectancy by Team. (Am. Compl., Counts III and IV.) More specifically, Quixtar claims that "tens of thousands of IBOs have either resigned or indicated that they would not renew their contracts with Quixtar" and that "*statements like these* have encouraged IBOs to leave Quixtar." (Ex. A to Dkt. No. 212-2, ¶¶ 6, 8, emphasis added.) This is the extent of Quixtar's proof of tortious interference caused by these four statements. Quixtar has never identified even one IBO that viewed any of these statements and left Quixtar as a result of the statement. In fact, it is undisputed that most, if not all, of the IBO resignations took place in September and October 2007, before any of these statements were posted online.[4] *See, e.g.*, Dkt. No. 1 ¶ 62; Dkt. No. 203 ¶ 203.

## II. The Magistrate Judge's Order

The Magistrate Judge ruled that the four identified statements from these two anonymous online speakers "are presented as facts and can be considered defamatory." (Dkt. No. 261; Ex. A at 37-38, 46.) The Magistrate Judge ruled that the identities of these anonymous speakers must be revealed to Quixtar through the deposition testimony of Benjamin Dickie, a non-party employee of Team.[5] (Dkt. No. 261.)

---

[4] Quixtar's executive submitted a similar affidavit on February 8, 2008, stating that "tens of thousands" of IBOs had left Quixtar. (Ex. B to Dkt. No. 212-2 ¶ 33.) This was only six days after the HAM video was posted.

[5] At the hearing, Quixtar's attorney presented a proposed order that restated much of the order that had been vacated by the District Court concerning the scope of Mr. Dickie's testimony. The attorney for the Anonymous Online Speakers objected, and the Magistrate Judge ordered the parties to consult and submit a proposed order on that subject. (Dkt. No. 261; Ex. A at 66.) Such an order has not yet been finalized. Separately, the Magistrate Judge also issued a minute order reflecting his ruling from the bench about Mr. Dickie's testimony. In order to preserve their right to review, the Anonymous Online Speakers file this objection to the minute order within 10 days from the order date. It is uncertain whether the separate not-yet-finalized order will also contain language that also requires review.

## ARGUMENT

### The Identities of the Two Speakers Are Protected From Disclosure By the First Amendment

**A.     The District Court's July Order**

In July, this Court sustained Mr. Dickie's objection to the Magistrate Judge's previous order compelling Mr. Dickie to testify, vacated that order, and remanded for further proceedings. (Dkt. No. 167.) The Court ordered Quixtar to identify the allegedly tortious statements and provided guidance on the proper test for protecting the online speakers' anonymity. The Court agreed with Mr. Dickie that *Doe v. Cahill*, **884 A.2d 451 (Del. 2005), "articulates the correct standard"** for determining whether the identities of anonymous speakers should be revealed. (Dkt. No. 167 at 20-22, emphasis added.) The Court explained that **discovery is not "warranted into the identity of an anonymous author where it is beyond reasonable dispute that the particular internet postings at issue are subject to a privilege or defense."** *Id.* at 21-22 (emphasis added).

According to this Court, "*Cahill* requires that the plaintiff give notice, or attempt to do so, and that the plaintiff satisfy a 'prima facie' or 'summary judgment standard'." (Dkt. No. 167 at 14.) This standard "requires a plaintiff to submit evidence sufficient to overcome a limited motion for summary judgment attacking the actionability of the . . . statements." *Id.* at 12-13. While this standard is normally applied to defamation claims, it applies equally to Quixtar's claim for tortious interference with a contract and with business expectancies (Counts III and IV), because the alleged interference is speech. *Id.* at 17. Since the cause of action involves speech, the First Amendment and state law privileges apply. *Id.*

Under Cahill, analysis of a First Amendment defense involves two steps. *Cahill*, 884 A.2d at 466. The Court should first decide whether the statement can reasonably be interpreted as stating fact or opinion. If it is opinion, the analysis stops because the statement is not defamatory and therefore not per se wrongful, as required for tortious interference. *Id.* at 467, n.78 ("[I]n order to recover, a plaintiff having a defamation claim based on a statement made in an internet chat room or on a blog must prove that a statement

is factually based and thus capable of a defamatory meaning."); *Lakeshore Community Hosp. v. Perry*, 212 Mich. App. 396, 402 (1995) ("[I]n cases where statements reasonably cannot be interpreted as stating actual facts about an individual, those statements are protected under the First Amendment.").

Next, the analysis continues in order to determine whether the online statement is hyperbole, satire, fair reporting, truth or other protected speech. Of similar statements made on blogs and in chat rooms, the *Cahill* court explained:

> Apart from the editorial page, a reasonable person reading a newspaper in print or online, for example, can assume that the statements are factually based and researched. ***This is not the case when the statements are made on blogs or in chat rooms.*** "When one views . . . allegedly defamatory statements in context – both the immediate context and the broader social context – it becomes apparent ***that many of the allegedly defamatory statements cannot be interpreted as stating actual facts, but instead are either 'subjective speculation' or 'merely rhetorical hyperbole.'*"

*Id.* at 466 (emphasis added). The Magistrate Judge was required to apply this rigorous analysis imposed by the District Court and the *Cahill* court. *See also Dendrite International, Inc. v. Doe No. 3*, 775 A.2d 756, 771 (N.J. Super. A.D. 2001); *Highfields Capital Mgmt. v. Doe*, 385 F. Supp. 2d 969, 970 (2005); *Krinsky v. Doe*, 2008 Cal. App. LEXIS 180 (2008).

### B. The Magistrate Judge's Order Was Clearly Erroneous and Contrary to Law

As to the first step of the *Cahill* test, the Magistrate Judge ruled that the four identified statements by the Anonymous Online Speakers "are presented as facts and can be considered defamatory." (Dkt. No. 261.) This is wrong because the statements "reasonably cannot be interpreted as stating actual facts." *Lakeshore Community Hosp.*, 212 Mich. App. at 402. As to the second step, the Magistrate Judge failed to expressly determine whether any of the other First Amendment defenses applied. In fact, the statements are protected speech and therefore cannot form the "improper" act element of a tortious interference claim sufficient to defeat a motion for summary judgment. Even if the statements were not protected, Quixtar has offered no proof that these statements caused any IBO to breach his contract, so Quixtar would lose a motion for summary judgment on this ground too, as shown in this section.

1. **The "Improper Act" Element of Tortious Interference**

   a. **SaveUsDickDeVos Blog**

   The Magistrate Judge's ruling that the SaveUsDickDeVos blog post on October 31, 2007, presents facts is contrary to law. To begin, the Court must note the "factual and contextual issues relevant to chat rooms and blogs":

   > Blogs and chat rooms tend to be vehicles for the expression of opinions; by their very nature, they are not a source of facts or data upon which a reasonable person would rely.

   *Cahill*, 884 A.2d at 465. Against that backdrop, it is clear that the post is not defamatory. The SaveUsDickDeVos blogger refers to quotes he read on another website and concludes, directly to Mr. DeVos, that the statements "sound truthful" to him. The blogger makes no claim of accuracy beyond his own belief and experience. Furthermore, the blog introduction states that it is a request to Mr. DeVos to change his legal strategies, and the posting was made during a time of heated public debate between Quixtar and Team, during which Quixtar publicly attacked Team and its leaders. *See, e.g.*, Dkt. No. 62 at Statement of Facts, Parts I.A., I.B. Since the blog post cannot "reasonably be interpreted as stating actual facts" about the defendant, the post is protected speech, and cannot be the basis of a claim for tortious interference. This blogger made these statements anonymously under the protection of the First Amendment and should not now be placed directly in Quixtar's litigious crosshairs for simply copying text from another website and opining that it sounded truthful.

   b. **HAM Video**

   The Magistrate Judge's ruling that the statements in the February 2, 2008, online video "are presented as facts and can be considered defamatory" is contrary to law.

   First, when viewed as a whole and in context as described above and as required by *Cahill*, the video is similar to a blog or chat room, and no reasonable person would view the video as stating "actual facts" about Quixtar. The video is amateurish and comical and contains misspellings and punctuation errors. It is "not a source of facts or data upon which a reasonable person would rely." *Cahill*, 884 A.2d at 465.

Second, the Magistrate Judge failed to make a determination on the second element and consider whether any of the other First Amendment defenses, like parody or satire, apply, as required by *Doe v. Cahill*. The video here is humorous, depicting Quixtar's General Counsel as Homer Simpson and HAM as Neo. It plainly lacks "the formality and polish typically found in documents in which a reader would expect to find fact." *Global Telemedia Int'l, Inc., v. Doe 1*, 132 F. Supp. 2d 1261, 1264 (C.D. Cal. 2001). Furthermore, the video was made in the context of an ongoing public debate, four months after Quixtar filed its complaint. The video is clearly parody or satire, and no reasonable reader would view the video as stating actual facts. *See Greenbelt Cooperative Publishing Ass'n, v. Bresler*, 398 U.S. 6, 13-14 (1970); *Garvelink v. Detroit News*, 206 Mich. App. 604, 610 (1994). The video statements are therefore protected speech and cannot be the basis of Quixtar's tortious interference claim.

In conclusion, as in *Cahill*,

> Given the context of the statement and the normally (and inherently) unreliable nature of assertions posted in chat rooms and on blogs, this is the only supportable conclusion. Read in the context of an internet blog, these statements did not imply an assertions of underlying objective facts.

As a matter of law, a reasonable person would not interpret the statements of HAM and SaveUsDickDeVos as stating facts about Quixtar. They are therefore not defamatory and cannot form the basis of Quixtar's tortious interference claim, and the Magistrate Judge's order should be reversed.

### 2.   The Causation Element of Tortious Interference

Quixtar's tortious interference claim requires proof of an unjustified or improper interference with a contract causing a breach of that contract and damages. *Derderian v. Genesys Health Care Systems*, 263 Mich. App. 364, 382 (2004); *Mino v. Clio Sch. Dist.*, 255 Mich. App. 60, 78 (2003); Dkt. No. 124 at Part II.B.2.b. The "improper" act alleged by Quixtar is defamation. Even if it had proved a defamatory statement, Quixtar failed to offer evidence to defeat a summary judgment motion on the tortious interference claims because no jury could reasonably find that any one of these statements caused a particular IBO to

breach its contract with Quixtar. Its executive's self-serving, vague and repetitive allegations that the statements fail to offer prima facie evidence of causation. (Ex. A to Dkt. No. 212-2 ¶¶ 6, 8.) *P.T. Today, Inc. v. Comm'r of the Office of Fin. & Ins. Servs.*, 270 Mich. App. 110, 151 (2006) (granting summary judgment of tortious interference claim for lack of causation where offer of proof was conclusory). This is especially true since there were a multitude of other, compelling business reasons for IBOs to leave Quixtar, as articulated by the Michigan court, and since Quixtar allowed similar comments to be placed on its own blogs, which could have just as likely caused IBOs to leave, (Dkt. No. 62, Ex. A-K, O), and since Quixtar has been the subject of such statements for years and is essentially "libel-proof". *Amway Corp. v. Proctor & Gamble Co.*, No. 1:98-CV-726 U.S. Dist. LEXIS 14455 at 9 (W.D. Mich. September 14, 2001), *aff'd* 346 F.3d 180, 185, n.7 (6th Cir. 2003). In addition, both the blog post and the video statements were made after the IBOs left Quixtar.[6] It is therefore impossible for Quixtar to offer evidence "sufficient to overcome a limited motion for summary judgment attacking the actionability of the . . . statements," as required by the *Cahill* standard.

## CONCLUSION

The Magistrate Judge simply "set the standard too low" for these two anonymous speakers, which "will chill potential posters from exercising their First Amendment right to speak anonymously." *Cahill* at 457. "The revelation of identity of an anonymous speaker may subject that speaker to ostracism for expressing unpopular ideas, invite retaliation from those who oppose her ideas or from those whom she criticizes or simply give unwanted exposure to her mental processes." *Id.* (internal quotations omitted).

The Anonymous Online Speakers object to the Magistrate Judge's order requiring that their protected identities be revealed to Quixtar, which is likely to retaliate against and silence the speakers through separate actions against them individually, because the

---

[6] The evidence of causation or damages is dated February 8, 2008, and states only that since August 9, 2007, "tens of thousands of Quixtar IBOs have either resigned or indicated that they would not renew their contracts with Quixtar. . . . It has cost Quixtar millions of dollars in lost sales." (Dkt. No. 54-2 ¶ 33.)

statements are insufficient to defeat a motion for summary judgment, as required by the District Court's order and by *Doe v. Cahill*.

DATED this 26th day of November, 2008.

JONES VARGAS

By: /s/ John P. Desmond
Kirk B. Lenhard, Nevada Bar No. 1437
John P. Desmond, Nevada Bar No. 5618
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89169
Telephone: (702) 862-3300
Facsimile: (702) 737-7705
kbl@jonesvargas.com

Daniel A. O'Brien (P42120)
Admitted pro hac vice
1060 E. West Maple Rd.
Walled Lake, MI 48390
Telephone: (248) 669-7281
Facsimile: (248) 669-9840
E-mail: obrienlegal@ryanandschouman.com

*Attorneys for Anonymous Online Speakers*

- 9 -

## CERTIFICATE OF SERVICE

I certify that I am an employee of JONES VARGAS, and that on this date, pursuant to FRCP 5(b), I am serving the foregoing **ANONYMOUS ONLINE SPEAKERS' OBJECTION TO MAGISTRATE JUDGE'S RULING**, on the parties set forth below by:

| | |
|---|---|
| _____ | Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage prepaid, following ordinary business practices. |
| _____ | Certified Mail, Return Receipt Requested |
| _____ | Via Facsimile (Fax) |
| _____ | Placing an original or true copy thereof in a sealed envelope and causing the same to be personally Hand Delivered |
| _____ | Federal Express (or other overnight delivery) |
| __XXX__ | E-service effected by CM/ECF |

John J. Frankovich
Miranda du
McDonald Carano Wilson LLP
100 W. Liberty St., 10th Floor
Reno, NV 89501
jfrankovich@mcdonaldcarano.com,
mdu@mcdonaldcarano.com

Cedric C. Chao
William L. Stern
James M. Schurz
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
cchao@mofo.com, wstern@mofo.com, jschurz@mofo.com

James Sobieraj
Dominic P. Zanfardino
Brinks Hofer Gilson & Lione
NBC Tower, Suite 3600
North Cityfront Plaza Drive
Chicago, IL 60611-5599
jsobieraj@usebrinks.com, dzanfardino@usebrinks.com

Bradley Smith
Jim Cleland
Brinks Hofer Gilson & Lione
524 South Main Street, Suite 200
Ann Arbor, MI 48104-2921
bsmith@usebrinks.com, jcleland@usebrinks.com

Edward J. Bardelli
Brian J. Masternak
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503
ebardelli@wnj.com, bmasternak@wnj.com

Evan Beavers
Evan Beavers and Assoc., P.C.
1625 Highway 88, Suite 304
Minden, NV 89423
beaverslaw@charterinternet.com

Daniel A. O'Brien
1060 E. West Maple Road
Walled Lake, MI 48390
obrienlegal@ryanandschouman.com

Michael Y. McCormick
McCormick Hancock & Newton
1900 West Loop South, Suite 700
Houston, TX 77027
mmcormick@mhn-law.com

DATED this 26th day of November, 2008.

_____/s/ Cindy Grinstead_____
An employee of Jones Vargas

- 10 -

## EXHIBITS

| Exhibit | Description |
|---|---|
| A-1 | Transcripts of Motions Hearing – November 12, 2008 – Pages 1-44 |
| A-2 | Transcripts of Motions Hearing – November 12, 2008 – Pages 45-90 |
| A-3 | Transcripts of Motions Hearing – November 12, 2008 – Pages 91-150 |
| A-4 | Transcripts of Motions Hearing – November 12, 2008 – Pages 151-189 & Word Index |