1 | Kirk B. Lenhard, Nevada Bar No. 1437
John P. Desmond, Nevada Bar No. 5618
2 | JONES VARGAS
3773 Howard Hughes Parkway
3 | Third Floor South
Las Vegas, Nevada 89169
4 | Telephone: (702) 862-3300
Facsimile: (702) 737-7705
5 | Email: kbl@jonesvargas.com, jpd@jonesvargas.com

6 | Sharon M. Woods (P22542) (Admitted *Pro Hac Vice*)
Morley Witus (P30895) (Admitted *Pro Hac Vice*)
Daniel J. LaCombe (P38602) (Admitted *Pro Hac Vice*)
7 | BARRIS, SOTT, DENN & DRIKER, P.L.L.C.
211 West Fort Street, 15th Floor
8 | Detroit, Michigan 48226-3281
Telephone: (313) 965-9725
9 | Facsimile: (313) 965-2493
E-Mail: swoods@bsdd.com, mwitus@bsdd.com, and dlacombe@bsdd.com

10 | William A. Sankbeil (P19882) (Admitted *Pro Hac Vice*)
KERR RUSSELL & WEBER PLC
11 | 500 Woodward Avenue, Suite 2500
Detroit, Michigan 48226
12 | Telephone: (313) 961-0200/Facsimile: (313) 961-0388
Email: was@krwlaw.com
13 | *Attorneys for Defendant*

14

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

15

16 | QUIXTAR, INC.,            )    CASE NO. 3:07-cv-00505
        Plaintiff,            )
17 |                          )    Hon. Edward C. Reed, Jr.
        v.                    )    Magistrate Judge Robert A. McQuaid, Jr.
18 |                          )
    SIGNATURE MANAGEMENT      )    **DEFENDANTS' MEMORANDUM OF POINTS**
    TEAM, LLC, d/b/a TEAM, and)    **AND AUTHORITIES IN SUPPORT OF MOTION**
19 | SKY SCOPE TEAM, INC.      )    **FOR PARTIAL SUMMARY JUDGMENT ON**
    TEAM, INC.,               )    **THE ILLEGAL PYRAMID SCHEME ISSUE**
20 |     Defendants.          )

21

22

23

24

**REDACTED**

JONES VARGAS
100 West Liberty Street, Twelfth Floor — P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

**TABLE OF CONTENTS**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF THE LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     A.   Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     B.   The Legal Standard for an Illegal Pyramid Scheme . . . . . . . . . . . . . . . . . 3

III. QUIXTAR'S OWN ADMISSIONS DEMONSTRATE THAT IT WAS AN ILLEGAL
     PYRAMID . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     F.   Quixtar Is Not Exonerated By the Administrative Decision Involving Its
          Predecessor Amway Over 30 Years Ago . . . . . . . . . . . . . . . . . . . . . . . . 15
          1.   The Controlling Case Law Over The Last 30 Years Developed
               a Definition of an Illegal Pyramid Scheme Which Fits Quixtar
               Exactly . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
          2.   Over 30 Years, Quixtar Developed Into an Illegal Pyramid
               Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
          3.   Quixtar's Rules Were Different than Amway's, They Were
               Not Enforced, and They Did Not Insure Any Retailing . . 17

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Redacted

ii

JONES VARGAS
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

# TABLE OF AUTHORITIES

**CASES:**

*Amway Corp. v. Proctor & Gamble Co.*, 2001 U.S. Dist. LEXIS 14455 (W.D. Mich. Sept. 14, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15, 19

*Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Federoff v. Ewing*, 386 Mich. 474; 192 N.W.2d 242 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*FTC v. Equinox Int'l Corp.*, 1999 U.S. Dist. LEXIS 19866 (D. Nev. Sept. 14, 1999) . . 3, 4, 17-19

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In the Matter of Amway Corp.*, 93 F.T.C. 618 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-18

*Koscot Interplanetary, Inc.*, 86 F.T.C. 1106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Michelson v. Voison*, 254 Mich. App. 691; 658 N.W.2d 188 ( 2003) . . . . . . . . . . . . . . . . . . . 3

*Sands Appliance Servs., Inc. v. Wilson*, 463 Mich. 231; 615 N.W.2d 241 (2000) . . . . . . . . . . 3

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Gold Unlimited, Inc.*, 177 F.3d 472 (6th Cir. 1999) . . . . . . . . . . . . . . . . 4, 17

*Webster v. Omnitrition Int'l*, 79 F.3d 776 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . 4, 13, 15, 17

Jones Vargas
100 West Liberty Street, Twelfth Floor — P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

iii

**STATUTES:**

15 U.S.C. § 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

M.C.L. 445.1528(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

N.R.S. 598.120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**RULES:**

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**OTHER:**

Peter J. Vander Nat; William W. Keep, Marketing Fraud: An Approach for Differentiating Multilevel Marketing from Pyramid Schemes, *Journal of Public Policy & Marketing*; Spring 2002; 21, 139 at 144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

JONES VARGAS
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

iv

**I.    INTRODUCTION**

Plaintiff Quixtar, Inc. is a multilevel marketing company ("MLM").  Quixtar has a network of distributors, called "Independent Business Owners" ("IBOs"), who buy Quixtar products and recruit more downline IBOs to do the same.

Defendant Signature Management Team, Inc. ("Team") was a company that Quixtar authorized to sell motivational and training products to IBOs.  Some of the leaders of Team were terminated on August 9, 2007, the same day they filed a class-action lawsuit against Quixtar.  Quixtar filed arbitration claims against the Team leaders.  Many other Team-affiliated IBOs resigned thereafter.

Quixtar then brought this action against defendants Team and its owner (Sky Scope).  Several of Quixtar's claims are predicated on defendants' alleged involvement in IBOs' alleged breaches of their contracts with Quixtar.  (Amd. Compl, Counts 2-5).  Those IBO contracts are unenforceable because Quixtar is an illegal pyramid scheme.  Accordingly, defendants bring this motion for summary judgment to dismiss the claims that are based on the illegal IBO contracts.

As shown below, an MLM is an illegal pyramid scheme if most of the sales are to distributors, with minimal retailing to outside consumers, so that distributors primarily receive income based on purchases by their downline recruits.  This motion is predicated on indisputable admissions in Quixtar's own internal documents.

Redacted

1

JONES VARGAS
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1   Quixtar's own documents contain the following admissions:



12   And **none** of this was ever disclosed to IBOs or prospective IBOs.

13   This brief will show that Quixtar's IBO contracts were void and unenforceable because, *based*

14   *upon its admissions*, Quixtar was indisputably an illegal pyramid scheme when the contracts were in

15   effect.  Several of Quixtar's claims – trade secret misappropriation (Count 2), tortious interference

16   with contracts and business relationships (Counts 3-4), and civil conspiracy (Count 5) – turn, at least

17   in part, on alleged breaches of Quixtar's IBO contracts.  Thus, defendants ask this Court to dismiss

18   the trade secret claim (Count 2) to the extent it is based on contract provisions that Quixtar claims

19   make certain information a trade secret, dismiss the tortious interference with contract and business

20   relationship claims (Counts 3 and 4) in their entirety, and dismiss the conspiracy claim (Count 5) to

21   the extent it is based on a conspiracy to breach the contract and tortiously interfere as alleged in

22   Counts 2-4.

2

Redacted

1  **II.    STATEMENT OF THE LAW**

2    A.    **Summary Judgment Standard**

3        Under Rule 56, this Court must grant summary judgment for defendants unless it determines

4  that there is enough evidence, considered in the light most favorable to Quixtar, for a "reasonable trier

5  of fact" to find for Quixtar. *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009). Quixtar must

6  now "put up or shut up." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). It

7  must present significant affirmative evidence showing that a trier of fact could find for it, and "bald

8  assertions or a mere scintilla of evidence in [its] favor are both insufficient to withstand summary

9  judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929, nn. 9-10 (9th Cir. 2009).

10    B.    **The Legal Standard for an Illegal Pyramid Scheme**

11        Contracts fostering illegal activities are unenforceable.[1] Both Michigan and Nevada statutes

12  specifically apply this principle to pyramid schemes, deeming them "illegal and against the public

13  policy of the state." M.C.L. 445.1528(2). *See also* N.R.S. 598.120. Pyramid schemes are also

14  banned as unfair and deceptive practices by Section 5 of the Federal Trade Commission Act (15

15  U.S.C. § 45). *FTC v. Equinox Int'l Corp.*, 1999 U.S. Dist. LEXIS 19866, *15 (D. Nev. Sept. 14,

16  1999) (Rawlinson, J.).

17        The basic definition of an illegal pyramid scheme is set out in a case in which Quixtar's

18  predecessor Amway was a party:

19        A pyramid scheme is one in which the profits of a few people at the "top" of an
         organization are made **primarily from those below them within the organization,**

20

21        [1] *Sands Appliance Servs., v. Wilson*, 463 Mich. 231, 239; 615 N.W.2d 241 (2000) ("[C]ourts
         have a duty to refuse to enforce a contract that is contrary to public policy."); *Federoff v. Ewing*, 386

22  Mich. 474, 481; 192 N.W.2d 242 (1971) ("Contracts contrary to public policy . . . are illegal and
         void[.]"); *Michelson v. Voison*, 254 Mich. App. 691, 694; 658 N.W.2d 188 (2003).

23                                              3

24

rather than from sales to persons outside the organization. The focus of a pyramid is to recruit more people into the group, rather than on retail sales.

*Amway Corp. v. Proctor & Gamble Co.*, 2001 U.S. Dist. LEXIS 14455, *36 (W.D. Mich. Sept. 14, 2001), *aff'd*, 346 F.3d 180 (6th Cir. 2003) (emphasis added) (citing *Webster v. Omnitrition Int'l*, 79 F.3d 776, 782 (9th Cir. 1996)).   The test is whether profits are derived primarily from sales to downline distributors or from sales to the public – in other words, whether the focus is recruiting or retailing.  The Ninth Circuit has similarly emphasized that "the *sine qua non* of a pyramid scheme" is "the right to receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to ultimate users." *Omnitrition*, 79 F.3d at 781 (citing *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106, 1181 (1975)).  *Accord, United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 480-81 (6th Cir. 1999).  The Ninth Circuit, the Sixth Circuit, and this District have held that sales to distributors within the organization do *not* count as sales to "ultimate users." *Omnitrition*, 79 F.3d at 783-84; *Gold Unlimited*, 177 F.3d at 480-81; *Equinox* 1991 U.S. Dist. LEXIS at *15-24.

An illegal pyramid "cannot save itself simply by pointing to the fact that it makes some retail sales," where the "promise of lucrative rewards for recruiting others tends to induce participants to focus on the recruitment side of the business at the expense of their retail marketing efforts, making it unlikely that meaningful opportunities for retail sales will occur." *Omnitrition*, 79 F.3d at 782. *See also*, Peter J. Vander Nat; William W. Keep, <u>Marketing Fraud: An Approach for Differentiating Multilevel Marketing from Pyramid Schemes</u>, *Journal of Public Policy & Marketing*, Spring 2002

JONES VARGAS
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

4

JONES VARGAS
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1  ("the organization is a pyramid scheme if the participants obtain their money primarily from

2  recruitment rather than the sale of goods and services to consumers," where "consumers" means

3  "those outside the organization").[2]

4         In sum, as the Court held in the *Amway* case, the question is whether the IBOs are paid

5  primarily from retail sales to consumers outside the organization, or from purchases by IBOs below

6  them in the organization – the latter are indirect rewards for recruiting, not retailing.

7  **III.   QUIXTAR'S OWN ADMISSIONS DEMONSTRATE THAT IT WAS AN ILLEGAL
             PYRAMID**

8

9         Quixtar clearly is within the legal definition of an illegal pyramid scheme.  As shown below,



16

17                                                                                      The

beneficiaries were the founding DeVos and Van Andel families at the top of the pyramid.  They

18

became billionaires, while the median gross income of active IBOs was just one dollar a year.

19

20

21

22         [2] The F.T.C. also recently emphasized that the requirement of substantial sales to "ultimate
    users" means true retail buyers outside the distributor network.  (Ex. 1, pp. 15-17 n. 6).

23                                                    5

24                                            Redacted



**A.** ████████████████████

████████████████████████

████████████████████ (Ex. 2 at QAW0152734-735).  But

it was virtually impossible to do this ████████████████████

████████████████

████████████████████████

████████████████████████

████████████████ (Ex. 3 Nos. 17-18; Ex. 4 pp. 24-

25; Ex. 5). ██████████████████████ (Ex.

6 at QAW0164597; Ex. 7 at QAW0170324). ██████████

████████████████████████

████████████████████ (Ex. 10 at

QAW0306900).[4] ██████████████████████

████████████████ (Ex. 14 at QAW0306139).  *See*

*also* (Ex. 15 at QAW0320027). ████████████

_____

[3]Both the F.T.C. and the Michigan Attorney General warn that high-priced goods that are hard to retail to outsiders are indicative of a pyramid scheme.

[4]████████████████████████

████████████████████████ (Ex. 11 at QAW0110352;

Ex. 12 at QAW0110375). ████████████████████████

████ (Ex. 13 at QAW0202451 (emphasis in original)).

6

Redacted

Jones Vargas
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177



1        ████████████████ (Ex. 16 at QAW0203550). ██████████████

2    ███████████████ (Ex. 17 at QAW0297304). In August 2007 (when the

3    events giving rise to this lawsuit took place), ████████████████████████

4    █████████████████████████████████████████████████████████████

5    █████████████████████████████████████████████████████████████

6    ███████████ (Ex. 18 at QAW0152622). Later that year, Quixtar also promised

7    █████████████████████████████████████████████████████████████

8    ██████████████ (Ex. 19 at QAW0170609).

9        In the mid-2000s Quixtar used embedded consultants from McKinsey & Company to

10   investigate the business and make recommendations; McKinsey's findings constitute admissions by

11   Quixtar pursuant to FRE 801(d)(2)(D) (statements by an agent within the scope of and during the

12   existence of the agency).[5] ███████████████████████████████████

13   ████████████████████████████████████████████ (Ex. 22 at

14   QAW0318876). ███████████████████████████████████████████

15   █████████████████████████████████████████████████████████████

16   █████████████████████████████████████████████████████████████

17   █████████████████████████████████████████████████████████████

18   █████████████████████████████████████████████████████████████

19   ██████████████████████████████ (Ex. 23 at QAW0322652 (also stating: ██

20   █████████████████████████████████████████████████ *Id.* at

21

      [5] Alticor's Office of Chief Executive retained McKinsey to help Quixtar diagnose and cure its

22   ailments. (Ex. 20 at QAW0314953). McKinsey's consultants were well-respected "partners" and
      team members of all levels of Quixtar's "First Circle Transformation". Ex. 20-21.

23                      7

24                                      Redacted

JONES VARGAS
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000  Fax: (775) 786-1177



1   QAW0322662).   Analyzing Quixtar's product prices, McKinsey found that ███████

2   ███████████ (*Id.* at QAW0322660).   Another consultant, retained by the IBO trade

3   association, ███████████████████████████████ (Ex. 24 at

4   ERESP140908).

5   ████████████████████████████████████████████

6   ████████████████████████████████████████████

7   ████████████████████████████████████████████

8   ████████████████████████████████████████████

9   ████████████████████████████████████████████

10  ████████████████████████████████████ (Ex. 20

11  at QAW0314955).   ██████████████████████████████

12  ██████████████████████████████████████ (Ex. 22

13  at QAW0318871-872; Ex. 25 at QAW0305991; Ex. 26 at QAW0315756; Ex. 15 at QAW0319996).

14      **B.**   ████████████████████████████████

15      ████████████████████████

16  ████████████████████████████████████████████

17  █████████████ (Ex. 27 at QAW0309375 (emphasis added)).   ████████████

18  ████████████████████████████████████████████

19  █████ (Ex. 28 at QAW0248495).   *See also* (Ex. 29 at QAW0164852).   ████████

20  ████████████████████████████████████████████

21  ████████████████████████████████ (Ex. 16 at QAW0203547-

22

23                                                    8

24                                          Redacted

Jones Vargas
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177



1

2   (Ex. 30 at QAW0277444).

3   (Ex. 31 at QAW0302774-775.)[6]

4

5

6

7   (Ex. 35 at QAW0223597

8   (emphasis added)).

9

10

11   (Ex. 37 at QAW0295808-809 (emphasis added)). *See also* (Ex. 25, 37).

12   (Ex. 38 at

13   QAW0203465 (emphasis added)).  Indeed, in August 2007,

14   (Ex. 39 at QAW0152588 (emphasis

15   added)).  Similarly, a Quixtar manager in 2006 described

16   (Ex. 40

17   at QAW0306830, QAW0306832).

18

19   _____

20   [6]   (Ex. 21 at QAW0318158).

21   (Ex. 32, pp. 16-17; Ex. 33 at QAW0299795; Ex. 34 at
    QAW0300151).   (Ex. 35 at QAW0223598).

22   *See also* (Ex. 30

23

24                                   Redacted

9



1

2   (Ex. 20 at QAW0314954; Ex.

3   41 at QAW0315552; Ex. 42 at QAW0317728).

4   (Ex. 43 at QAW0297183).  Quixtar acknowledged in late 2007 that

5

6   (Ex. 44 at QAW0295300).

7

8   (Ex. 45 at QAW0093020).

9

10

11

12   **C.**

13

14

15   (Ex. 49.)

16

17

18

19

20

21   (Ex. 46, Ex. 48 pp. 30-33, 104-05, 117-18, 150-52).

22

23   (*Id.*).

24

10

Redacted

JONES VARGAS
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177



(Ex. 50 at QAW0295624).

(Ex. 51).

(Ex. 50 at QAW0295624, QAW0295632; Ex. 52 at QAW0319059-060).

(Ex. 53 at QAW0241065).

(Ex. 54 at QAW0326655).

(Ex. 20 at QAW0314954 (emphasis in original)).    (Ex. 55 at QAW0312070).

(Ex. 56 at QAW0137124).

(Ex. 53 at QAW0241058).

(Ex. 57 at QAW0164951).

(Ex. 58 at QAW0315234).

11

Redacted



1 ██████████████████████████████████████ (Ex. 19 at

2 QAW0170608). ████████████████████████████████

3 ██████████████ (Ex. 59; Ex. 60 at QAW0306914).

4 **D.** ███████████████████████████

5 █████████████████████████████████████

6 █████████████████████████████████████

7 (Ex. 61 pp. 13-17, Exs. D-H).[8] ███████████████

8 ████████████████████████████████████████

9 ████████████████████████████████████████

10 ████████████████████████████████████████

11 ████████████████████████████████████████

12 ████████████████████████████████████████

13 ████████ Quixtar thus clearly flunks the prevailing legal test for a legitimate MLM, because

14 ████████████████████████████████████████

15 ████████████████████████[9]

16

17

18

19 [8]As noted in Section B, ██████████████████████████ In Section C, the focus is on a somewhat different comparison: of the compensation (bonuses) Quixtar paid to IBOs, what percentage was revenue from

20 retail sales to consumers outside the organization?  The law has focused on this ratio to determine if there is an illegal pyramid scheme.

21 [9] ████████████████████████████████████

22 ████████████████████ (Ex. 19, 58-66). ████████ (Ex. 67, p. 126).

23 

24

Redacted

Jones Vargas
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177



"Pyramid schemes are bound to collapse." *Omnitrition*, at 785.

(Ex. 85 at QAW0306939 (emphasis added)).

(Ex. 50 at QAW0295624; Ex. 60 at QAW0306913).

(Ex. 68 at QAW0231308; Ex. 50 at QAW0295623; Ex. 69 at QAW0173918).

(Ex. 20 at QAW0314953).

(Ex. 20

---

[10] Quixtar claims the IBOs affiliated with Team breached their 2007 contract and Quixtar terminated the leaders for breach in August 2007. (Quixtar contracts with IBOs last a year, subject to renewal or termination.) So 2007 is the relevant year for determining whether Quixtar was an illegal pyramid and the contracts were therefore invalid.

13

Redacted



1   at QAW0314955-956). *See also* (Ex. 70 at QAW0300964 ███████████████

2   ██████████████████████████████████████████████████████████████

3   ██████████████████████████████████████████ (*Id.*; Ex. 20 at QAW0314951,

4   955).

5   ████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  (Ex. 71 at QAW0310865 (emphasis added)). ████████████████████████

13  ████████████████████████████████████████████████████████████

14  ███████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ███████████████████████████████████ (Ex. 71 at QAW0310868). █████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████ (Ex. 72 at QAW0307934; Ex. 73 at QAW0318348).

20  *See also* (Ex. 19 at QAW0170608-610; Ex. 69 at QAW0173917; QAW0173920; QAW0173927).

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23

24

14

Redacted

Jones Vargas
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

**F.     Quixtar Is Not Exonerated By the Administrative Decision Involving Its Predecessor Amway Over 30 Years Ago**

Quixtar relies heavily on a decision by the F.T.C. which found that Amway as it existed over 30 years ago was not an illegal pyramid scheme. *In the Matter of Amway Corp.* ("*F.T.C.*"), 93 F.T.C. 618, 1979 FTC LEXIS 390 (1979).  As shown below, this reliance is baseless.  First, Quixtar is relying on an administrative hearing decision, not a court decision — the case law as developed by the federal courts since 1979 clearly makes Quixtar an illegal pyramid because ███████████
█████████████████████████████████████  Second, Amway over 30 years ago was a far different business than Quixtar, ██████████████████████████████████████
████████████████████████  Third,  the F.T.C. decision cited company rules that effectively encouraged retail sales over 30 years ago, ████████████████████████████████
██████████████████████████████████████

**1.     The Controlling Case Law Over The Last 30 Years Developed a Definition of an Illegal Pyramid Scheme Which Fits Quixtar Exactly**

As shown in section II.B above, over the last 30 years, federal case law has crystallized a standard for judging an illegal pyramid scheme, based on the degree of retail sales to the public and whether distributors' compensation comes primarily from purchases made by their downline recruits. *Amway Corp. v. Proctor & Gamble Co.*, 2001 U.S. Dist. LEXIS 14455; *Omnitrition*, 79 F.3d 776. The case law has established that merely having rules is no substitute for having retail sales.  Quixtar flunks the test.

**2.     Over 30 Years, Quixtar Developed Into an Illegal Pyramid Scheme**

The F.T.C. administrative decision looking at Amway's business 30 years ago does not have any bearing on whether Quixtar was a pyramid scheme 30 years later.

15

Redacted

JONES VARGAS
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177



Indeed, the 1979 F.T.C. decision noted that Amway distributors sold competitively priced products to retail customers. *F.T.C.*, at *24; *36, Findings 26-27; *34, Finding 23; *36, Finding 27; *41, Finding 50; *114-15, Finding 182; *118; *121-22; *146, n. 15; *170; *171-72; *193-94; *197. The F.T.C. in 1979 did not face a company like Quixtar that

As shown in section III.E above,

*See e.g.* (Exs. 79-82).

the 1979 F.T.C decision noted that Amway was growing, thriving, and retail-oriented, a real business opportunity for many distributors. Distributor numbers were rising (*F.T.C.*, *39, Finding 41; *56, Finding 70; *102, Finding 151; *183); distributor retention was increasing (*Id.*, *99, Finding 148, *183); sales showed "uninterrupted growth" (*Id.*, *102, Finding 151; *172), and Amway distributors' income was rising (*Id.*, *102, Finding 151; *243).[11]

In short, there were tremendous differences between the company analyzed in the 1979 F.T.C. decision and Quixtar 30 years later.

[11] (Ex. 74 at QAW0137122). *F.T.C.* at *108 (Finding 166).

16

Redacted

Jones Vargas
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

**3.** ████████████████████████

In addition to the factors discussed above, the F.T.C. found that Amway, as it existed over 30 years ago, was not an illegal pyramid in part because Amway effectively enforced rules that encouraged "retail sales to consumers" and deterred "inventory loading": (1) a "Seventy Percent Rule," (2) a "Ten Customer Rule," and (3) a "Buy-Back Rule." *F.T.C.* at *57, 57-58, 98-99, 122, 170, 206-207, 222. ████████████████████████

████████████████████████

An MLM cannot rely on distributors' self-certification or on an assumption distributors will comply with a rule. *Omnitrition*, 79 F.3d at 783-84; *Equinox*, 1999 U.S. Dist. LEXIS 19866 at *19-20. Nor can an MLM escape culpability by conveniently failing to compile relevant data and then pleading ignorance. *Equinox* at **12 and 22-23. Having rules is no substitute for retail sales: "The key to any anti-pyramiding rule . . . is that the rule must serve to tie recruitment bonuses to actual retail sales in some way." *Omnitrition*, 79 F.3d at 783. *See also Gold Unlimited*, 177 F.3d at 482.



(Ex. 45, QAW0093035). This was a lower hurdle than Amway's "Ten Customer Rule," which required distributors to sell products to ten different retail customers each month. (*Id.*; Ex. 75, QAW0171882; Ex. 76 at QAW0319920).

Redacted

17

JONES VARGAS
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177



1

2   (Ex. 75; Ex. 45; *F.T.C.*, at *57-58, Finding 74; *58, Finding 75; *98-99,

3   Finding 147; *206-207; and *222; Ex. 75, QAW0171874; Ex. 77 at QAW0319663).

4

5   (Ex. 45, QAW0093035).

6

7   (Ex. 76 at QAW0319918).

8   (Ex. 67, pp. 157-158).

9   (Ex. 78 at QAW0316600).

10

11

12

13   (*Amway* at *38).  (Ex. 63 pp. 7, 23, 60-62; Ex. 79; Ex. 76 at QAW0319918).

14

15   *Equinox* **12, 21.

16

17

18

19   (Ex. 45, QAW0093035).

20

21

22

23                         18              Redacted

24

JONES VARGAS
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000  Fax: (775) 786-1177



1 █████████████████████████████████████████████████████

2 ████ (*Id.*; Ex. 67, pp. 222-23). █████████████████████████

3 ███████[12]

4 █████████████████████████████████████████████████████

5 █████████████████████████████████████████████████████

6 █████████████████████████████████████████████████████

7 ██████████ (Ex. 45, QAW0093038). ████████████████████████

8 █████████████████████████████████████████████████████

9 ███████████████████ (Ex. 3, No. 21, Ex. 82; Ex. 84 pp. 154-162).

10 █████████ "provide(s) an inference that a majority of product sold to . . . distributors is

11 unrefundable." *Equinox* at *23.

**IV.   CONCLUSION**

By 2007, Quixtar clearly was an illegal pyramid scheme as defined by the case law, where: "the profits of a few people at the 'top' of an organization are made primarily from those below them within the organization, rather than from sales to persons outside the organization. The focus of a pyramid is to recruit more people into the group, rather than on retail sales." *Amway*, 2001 U.S. Dist. LEXIS 14455, *36. ██████████████

18 █████████████████████████████████████████████████████

19 ──────────────

20 ███[12]██████████████████████████ (Ex. 80; Ex. 37 at QAW0295811). ████

21 █████████████████████████████████████████████████████

22 ██ (Ex. 81 at QAW0096733, Ex. 82; Ex. 83 pp. 5-6, 80-81). ███████████

23 ████████████████████████████████████ *Equinox* at *19-20.

19

**Redacted**

Jones Vargas
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177



Defendants respectfully request dismissal of Quixtar's contract-related claims in Counts 2-5 because the underlying contracts allegedly breached or interfered with were instruments of an illegal pyramid scheme, and were, therefore, void and unenforceable.

JONES VARGAS
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

20

Redacted

Respectfully submitted,

By:      /s/ John P. Desmond
JONES VARGAS
Kirk B. Lenhard
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89169
Telephone: (702) 862-3300/Fax: (702) 737-7705

Sharon M. Woods (P22542)
Morley Witus (P30895)
Daniel J. LaCombe (P38602)
*(All Admitted Pro Hac Vice)*
BARRIS, SOTT, DENN & DRIKER, P.L.L.C.
211 W. Fort Street, 15th Floor
Detroit, Michigan 48226-3281
Phone: (313) 965-9725/Fax: (313) 965-2493
Email: swoods@bsdd.com & mwitus@bsdd.com

William A. Sankbeil (P19882)
*(Admitted Pro Hac Vice)*
KERR RUSSELL & WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, Michigan 48226
Phone: (313) 961-0200/Fax: (313) 961-0388
Email: was@krwlaw.com

DATE: May 24, 2010

Pyramid.wpd

21

## EXHIBITS LIST FOR DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ILLEGAL PYRAMID SCHEME ISSUE

1. June 5, 2007 F.T.C. Memorandum, *F.T.C. v. Burnlounge, Inc.* (United States District Court for the Central District of California Case No. 2:07-cv-03654) – http://www.ftc.gov/os/caselist/0623201/061207memorandum.pdf

2. "The Quixtar Opportunity" Pamphlet and Transmittal Email (QAW0152725-740) **[FILED UNDER SEAL]**

3. First Supplemental Responses to Interrogatories in *Quixtar Inc. v. Woodward, et al.* (JAMS Arbitration File No. 1100052219) **[FILED UNDER SEAL]**

4. Second Supplemental Responses to Interrogatories in *Quixtar Inc. v. Woodward, et al.* (JAMS Arbitration File No. 1100052219) **[FILED UNDER SEAL]**

5. 88 pages of IBO complaints from 2001-2006 that Quixtar's products were too expensive. (QAW0111400-487) **[FILED UNDER SEAL]**

6. October 2007 Data Bits (QAW0164595-0164602) **[FILED UNDER SEAL]**

7. IBO Loyalty Program – Consumer & Market Insight – Global Results Summary 2007 (QAW0170314-334) **[FILED UNDER SEAL]**

8. May 13, 1998 speech on "Pyramid Schemes" by F.T.C. General Counsel, Debra Valentine, to the International Monetary Fund's Seminar on Current Legal Issues Affecting Central Banks (R-0103 – http://www.ftc.gov/speeches/other/dvimf16.shtm)

9. Consumer Alert, "The $100,000 Pyramid Scheme – Multi-Level Marketing or Illegal Pyramid Scheme?"(http://www.michigan.gov/printerFriendly/0,1687,7-164-34739_20942-208400–,00.html)

10. March 3-5, 2007 Email Chain Regarding "Hawkins/Davis Meeting" (QAW0306900-902) **[FILED UNDER SEAL]**

11. September-October 2006 Email Chain Regarding "Ocean Essentials vs. Costco per 100 mg" (QAW0110352-356) **[FILED UNDER SEAL]**

12. October-November 2006 Email Chain Regarding "I NEED YOUR ADVICE" (QAW0110374-377) **[FILED UNDER SEAL]**

13. October 12, 2005 Email from Orrin Woodward to Jim Payne attaching Letter to Doug (QAW0202449-454) **[FILED UNDER SEAL]**

14. Results of First Circle Call for Ideas and July 2007 Transmittal Emails  (QAW0306135-157) **[FILED UNDER SEAL]**

15. Creating a Consumer-Oriented Marketing Organization – Update to Executive Staff – June 7, 2007, May 2007 Global Transformation Survey, and June 14, 2007 Transmittal Email (QAW0319982-20029) **[FILED UNDER SEAL]**

16. November-December 2005 Email Chain Regarding " Bullet Points: Edibles-First Circle" (QAW0203547-550) **[FILED UNDER SEAL]**

17. First Circle Transformation – Board of Directors Presentation – January 31, 2006, and February 2, 2006 Transmittal Email (QAW0297291-310) **[FILED UNDER SEAL]**

18. Business-Specific Initiative Update – Quixtar New Product Development SWAT Team, and August 2007 Transmittal Emails (QAW0152618-622) **[FILED UNDER SEAL]**

19. Quixtar Growth Strategy – November 2007 (QAW0170605-638) **[FILED UNDER SEAL]**

20. August 2005 Email Chain Regarding "From Randy Bancino re LTSP" and attached Quixtar Long-Term Strategic Planning Process – Management Talking Points – 8/5/05 (QAW0314949-958) **[FILED UNDER SEAL]**

21. OCE Presentation – The First Circle Transformation: Principle by Principle, and April 11, 2007 Transmittal Email from Rob Davidson (QAW0318154-162) **[FILED UNDER SEAL]**

22. Retail Product Portfolio Augmentation – Discussion Document – February 24, 2006 (QAW0318864-933) **[FILED UNDER SEAL]**

23. First Circle Transformation – Phase 2 – Integrated Strategy Document – December 19, 2005, and December 15, 2005 Transmittal Email (QAW0322636-697) **[FILED UNDER SEAL]**

24. Amway Position Paper – July 2007 (ERESP140891-910)

25. Overview: Recommendations Around Quixtar's Retail Product Portfolio – Discussion Document – Compilation of Findings – April 2007 (QAW0305985-6016) **[FILED UNDER SEAL]**

26. May 2007 Email Chain Regarding "Consumer Focus/Orientation"  (QAW0315754-757) **[FILED UNDER SEAL]**

27. May 2007 Email Chain Regarding "Income Comparables" (QAW0309374-378) **[FILED UNDER SEAL]**

28. May 22, 2007 Email from Jennifer Cardwell to Todd Krause (Quixtar Director of Sales) Regarding "Income Comparables." (QAW0248495-499) **[FILED UNDER SEAL]**

29. January 2007 Data Management's Data Bits (QAW0164850-859) **[FILED UNDER SEAL]**

30. November 2005 Email Chain Regarding "Booth and Fund-Raising Rules" (QAW0277444-447) **[FILED UNDER SEAL]**

31. Estimating Force Size Changes Spreadsheet and November 23, 2005 Transmittal Email (QAW0302771-780) **[FILED UNDER SEAL]**

32. October 30, 2008 Deposition of William R. Dangl (*Quixtar, Inc. v. Orrin Woodward, et al.* – JAMS Arbitration Case No. 11000052092) **[FILED UNDER SEAL]**

33. "BOD Update" and March 9, 2006 Transmittal Emails (QAW0299793-796) **[FILED UNDER SEAL]**

34. First Circle Transformation – Help More IBOs ... Make More Money ... Sooner – IBOAI Presentation – March 2006, and March 21, 2006 Transmittal Emails (QAW0300143-154) **[FILED UNDER SEAL]**

35. "What Happened? / What's Broken?" – March 7, 2007  (QAW0223593-599) **[FILED UNDER SEAL]**

36. Number Not Used

37. First Circle Storyline and October 14, 2005 Transmittal Email (QAW0295805-817) **[FILED UNDER SEAL]**

38. November 2005 Making the First Circle Work (QAW0203453-496) **[FILED UNDER SEAL]**

39. August 2007 Email Exchange Regarding "Sampling Strategy Doc" (QAW0152588-591) **[FILED UNDER SEAL]**

40. BOD – October 2006, and October 30, 2006 Transmittal Email Regarding "Notes for BOD Discussion" (QAW0306830-834) **[FILED UNDER SEAL]**

41. First Circle – Where From Here, First Circle – Case for Change, and January 30, 2006 Transmittal Email from Doug DeVos (QAW0315548-554) **[FILED UNDER SEAL]**

42. Diamond Club 2006 – Jim Payne – Talking Points for "The Entrepreneurial Spirit" (QAW0317720-735) **[FILED UNDER SEAL]**

43. First Circle Summary for Diamond Club – Diamond Club 2006, and January 31, 2006 Transmittal Email Regarding "Cabana-Speak for First Circle" (QAW0297181-187) **[FILED UNDER SEAL]**

44. Making the First Circle Work – Executing a Successful Transformation Program – Kickoff Document – August 29, 2005, Making the First Circle Work – Executing a Successful Transformation Program – Work Plan Document – August 29, 2005, and August 26, 2005 Emails Regarding "First Cut Documents for Next Week"(QAW0295288-334) **[FILED UNDER SEAL]**

45. Quixtar's "Business Reference Guide" – September 2006 Revisions (QAW0092985-3084) **[FILED UNDER SEAL]**

46. Customer Data – North America (QAW0112008) **[FILED UNDER SEAL]**

47. Quixtar "Customer Volume Reports" Showing Member/Client or Customer PV from August 2005 through August 2007 QAW0165615-0165619, 165607, 165582, 165558, 165531, 165507, 164579, 165452,165434,165403, 165391, 165370, 164849, 164829, 164801, 164722, and 164650) **[FILED UNDER SEAL]**

48. September 16, 2008 Rule 30(b)(6) Deposition of William R. Dangl (*Quixtar, Inc. v. Orrin Woodward, et al.* – JAMS Arbitration Case No. 11000052092) **[FILED UNDER SEAL]**

49. Distribution of IBOs by Performance Brackets (QAW0227094-095) **[FILED UNDER SEAL]**

50. Establishing Long-Term Growth: Emerging Insights – OCE Update Meeting – July 13, 2005, and October 11, 2005 Transmittal Email (QAW0295619-639) **[FILED UNDER SEAL]**

51. Quixtar SA-4400 Form (QAW0038572-610) **[FILED UNDER SEAL]**

52. Establishing Long-Term Growth for Quixtar – Working Team Session – June 28, 2005, and March 29, 2007 Transmittal Email Regarding "Developing Retailable Product Portfolio at Quixtar" (QAW0319030-068) **[FILED UNDER SEAL]**

53. Quixtar Strategic Planning Financial Presentation, and May 10, 2006 Transmittal Email Regarding "Rough Draft of Presentation" (QAW0241051-070) **[FILED UNDER SEAL]**

54. May 10, 2005 "Establishing Long-Term Growth for Quixtar" (QAW0326628-675) **[FILED UNDER SEAL]**

55. From Quixtar to the New Amway – A Name Transition – A Business Transformation – Alticor Board: November 1, 2007, From Quixtar to the New Amway – A Name Transition – A Business Transformation – IBOAI: October 17, 2007, and October 17, 2007 Transmittal Email (QAW0312023-107) **[FILED UNDER SEAL]**

56. IBO Registration and Renewal Information (QAW0137124) **[FILED UNDER SEAL]**

57. June 2005 Data Management's Data Bits (QAW0164948-957) **[FILED UNDER SEAL]**

58. August 11, 2006 Transmittal email fro Todd Babbitz, "Fulfilling Alticor's Aspirations Through Cultural and Organization Transformation (QAW0315221-260) **[FILED UNDER SEAL]**

59. US – ADA Dist Force – Total (000) (QAW0112007) **[FILED UNDER SEAL]**

60. Quixtar Request for Special Funding – March 2007, and March 9, 2007 Transmittal Email Exchange Regarding "Revisions to Funding Request Doc." (QAW0306913-923) **[FILED UNDER SEAL]**

61. Supplemental Expert Report of Van E. Conway – August 14, 2009 (*Quixtar, Inc. v. Signature Management Team, LLC, d/b/a Team, et al.* (United States District Court for the District of Nevada Case No. 3:07-cv-00505) – Coughlan 10-16-09 Deposition Ex. 4) **[FILED UNDER SEAL]**

62. April 6, 2007 Declaration of Robert F. Fitzpatrick (*Pokorny v. Quixtar, Inc., et al.* (United States District Court for the Northen District of California Case No. 3:07-cv-0201))

63. October 30, 2008 Deposition of Karen Axdorff (*Quixtar, Inc. v. Orrin Woodward, et al.* – JAMS Arbitration Case No. 11000052092)) **[FILED UNDER SEAL]**

64. August 11, 2006 Email from Karen Axdorff (Global Business Conduct) to Robert Dickie (Team) Regarding "Sheila Meiste) **[FILED UNDER SEAL]**

65. Number Not Used

66. Woodward Notes – June 22, 2001 (QAW0065213-215) **[FILED UNDER SEAL]**

5

67.   October 3, 2008 Rule 30(b)(6) Deposition of Gary VanderVen (*Quixtar, Inc. v. Orrin Woodward, et al.* – JAMS Arbitration Case No. 11000052092)) **[FILED UNDER SEAL]**

68.   June 26, 2007 Email Regarding "Chicago Mtg Notes from June 20-21 Mtg," and Attachment (QAW0231306-309) **[FILED UNDER SEAL]**

69.   2009 Amway Global Annual Operating Plan (QAW0173915-941) **[FILED UNDER SEAL]**

70.   BOD Update – Draft – For DLD and SVA – First Circle Transformation, and March 9, 2006 Transmittal Email Regarding "BOD Update on FC" (QAW0299789-792) **[FILED UNDER SEAL]**

71.   Agenda/Talking Points – OCE Presentation – 2 p.m. May 8, and May 9, 2007 Transmittal Email Exchange (QAW0310863-869) **[FILED UNDER SEAL]**

72.   "Transformation" Document and January 4, 2008 Transmittal Email (QAW0307934-937) **[FILED UNDER SEAL]**

73.   Quixtar – Growth Strategy Discussion Outline – Version 2.0, Quixtar Growth Strategy – October 2007, and October 2007 Transmittal Emails (QAW0318348-396) **[FILED UNDER SEAL]**

74.   U.S. Summary of Financial Results  (QAW0137120-0137122) **[FILED UNDER SEAL]**

75.   1979 Amway Business Reference Guide (QAW0171841-974)

76.   First Circle Transformation – Sales Plan and Incentive Team – PMO Update – November 15, 2005, and February 28, 2006 Transmittal Email Regarding "MCVR Document – Confidential" (QAW0319913-932) **[FILED UNDER SEAL]**

77.   First Circle Transformation – Final Presentation – Appendix – December 19, 2005 (QAW0319597-729)  **[FILED UNDER SEAL]**

78.   First Circle Transformation – Discussion on Product Portfolio Workstream – April 26, 2006, and April 19, 2006 Transmittal Email Regarding 4/13 Business Structure Minutes (QAW0316600-605) **[FILED UNDER SEAL]**

79.   Complaint in *Woodward, et al. v. Quixtar Inc.* (*Quixtar Inc. v. Signature Management Team, LLC, d/b/a Team, et al.* – United States District Court for the Central District of California Case No. CV-07-05914-CAF) (Including all exhibits and Florence Errata)

80.     October 21, 2004 Email from Gary VanderVen Regarding "70% Rule Interpretation" (QAW0200386-387) **[FILED UNDER SEAL]**

81.     Kate's E-News – 2006 – Volume 8 (QAW0096733-735) **[FILED UNDER SEAL]**

82.     Spreadsheet Analyzing (a) Quixtar Sales by Fiscal Year (QAW0137114-117); (b) IBO Income Statistics By Qualification Level (QAW0128313-316); (c) U.S. Sales History (QAW0137120-122); and (d) Quixtar IBO Earnings Summary – 1999-2006 (QAW0317916-917) **[FILED UNDER SEAL]**

83.     September 18, 2008 Deposition of Ron Mitchell (*Quixtar, Inc. v. Orrin Woodward, et al.* – JAMS Arbitration Case No. 11000052092) **[FILED UNDER SEAL]**

84.     November 20, 2008 Deposition of Anne T. Coughlan, Ph.D. (*Quixtar, Inc. v. Orrin Woodward, et al.* – JAMS Arbitration Case No. 11000052092) **[FILED UNDER SEAL]**

85.     A Turning Point – Plan for Long-Term Health & Growth, and March 2007 Transmittal Emails Regarding "FOR REVIEW – Turning Point Presentation and Talking Points" (QAW0306935-954) **[FILED UNDER SEAL]**

390265.2

**CERTIFICATE OF SERVICE**

I certify that I am an employee of JONES VARGAS, and that on this date, pursuant to FRCP 5(b), I am serving a true copy of the attached **Defendants' Motion for Partial Summary Judgment on the Illegal Pyramid Scheme Issue**; **REDACTED Statement of Undisputed Material Facts in Support of Defendants' Motion for Partial Summary Judgment on the Illegal Pyramid Scheme Issue**; **REDACTED Memorandum in Support of Defendants' Motion for Partial Summary Judgment on the Illegal Pyramid Scheme Issue**; **Exhibit List**; **Exhibits 1, 8-9, 24, 36, 62, 65, 75, and 79**; and this **Certificate of Service** by Notice of Electronic Filing via the CM/ECF system as maintained by the Court Clerk's Office on the party(s) set forth below:

Evan Beavers beaverslaw@charterinternet.com
John J. Frankovich jfrankovich@mcdonaldcarano.com, khenley@mcdonaldcarano.com
Miranda M. Du mdu@mcdonaldcarano.com, kryd@mcdonaldcarano.com
James M. Schurz jschurz@mofo.com, cvestesi@mofo.com, lsangalang@mofo.com
Sharon M. Woods swoods@bsdd.com, mtortomose@bsdd.com
Cedric C. Chao cchao@mofo.com
William L. Stern wstern@mofo.com
Andrea B. Hasegawa ahasegawa@mofo.com
Morley Witus mwitus@bsdd.com, smcfadden@bsdd.com
Wm. Charles Bundren cbundren@aol.com
Edward J. Bardelli ebardelli@wnj.com
Brian Masternak bmasternak@wnj.com
James R. Sobieraj jrs@brinkshofer.com, federalcourts@brinkshofer.com
Dominic P. Zanfardino dzanfardino@usebrinks.com
James K. Cleland jcleland@usebrinks.com
Bradley L. Smith bsmith@usebrinks.com, bshaw@usebrinks.com, kwatson@usebrinks.com
Michael Y. McCormick mmccormick@mhn-law.com, aspaeth@mhn-law.com, bzepeda@mhn-law.com
William A. Sankbeil was@krwlaw.com, cjv@krwlaw.com, cmh@krwlaw.com
Joanne Geha Swanson jgs@krwlaw.com, cjv@krwlaw.com
Ricardo J. Lara rjl@krwlaw.com
Daniel J. LaCombe dlacombe@bsdd.com, pdarnell@bsdd.com
Robert G. Pluta rpluta@brinkshofer.com
Ronald T. Hancock rhancock@mhn-law.com
Anthony E. Spaeth aspaeth@mhn-law.com

Page 1 of 2

1 | Daniel J.M. Schouman dschouman@gmail.com, annalabellarte@ryanandschouman.com
Somnath Raj Chatterjee schatterjee@mofo.com
2 | Subpoena Respondents beaverslaw@charterinternet.com

3 |         DATED this 24th day of May, 2010.

4 |                                         /s/ Cindy S. Grinstead
                                         An employee of JONES VARGAS
5 |

6 |

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |                         Page 2 of 2

24 |

JONES VARGAS
100 West Liberty Street, Twelfth Floor – P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000  Fax: (775) 786-1177