1   John P. Desmond, Nevada Bar No. 5618
    JONES VARGAS
2   100 West Liberty Street
    Twelfth Floor
3   P.O. Box 281
    Reno, NV 89504-0281
4   Telephone: (775) 786-5000
    Facsimile: (786) 786-1177
5   Email: jpd@jonesvargas.com

6   Sharon M. Woods (P22542) (Admitted *Pro Hac Vice*)
    Morley Witus (P30895) (Admitted *Pro Hac Vice*)
7   Daniel J. LaCombe (P38602) (Admitted *Pro Hac Vice*)
    BARRIS, SOTT, DENN & DRIKER, P.L.L.C.
8   211 West Fort Street, 15th Floor
    Detroit, Michigan 48226-3281
9   Telephone: (313) 965-9725
    Facsimile: (313) 965-2493
10  E-Mail: swoods@bsdd.com,
    mwitus@bsdd.com and dlacombe@bsdd.com

11
    William A. Sankbeil (P19882)
12  (*Admitted Pro Hac Vice*)
    KERR RUSSELL & WEBER PLC
13  500 Woodward Ave Ste 2500
    Detroit, MI 48226
14  Phone: (313) 961-0200 / Fax: (313) 961-0388
    Email: was@krwlaw.com
15
    *Attorneys for Defendants*

16                      UNITED STATES DISTRICT COURT
17                         DISTRICT OF NEVADA

18  QUIXTAR, INC.,                          ) CASE NO. 3:07-cv-00505-ECR-(RAM)
                                            )
19          Plaintiff,                      ) Hon. Edward C. Reed, Jr.
                                            ) Mag. Judge Robert A. McQuaid, Jr
20          v.                              )
                                            )
21  SIGNATURE MANAGEMENT TEAM,              )
    LLC, d/b/a TEAM, et al.                 )
22                                          )
            Defendants.                     )
23

24  **DEFENDANTS' REPLY TO OPPOSITION BY QUIXTAR INC. TO
    DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON
25  THE ILLEGAL PYRAMID ISSUE**

26

27                              *REDACTED*

28

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ..............................................................................................ii

I.   INTRODUCTION..........................................................................................................1

II.  LEGAL STANDARDS ................................................................................................1

   A.   Illegal Contracts are Unenforceable Under Both Michigan and Nevada Law.....................1

   B.   Quixtar Incorrectly Argues that the Amount of Self-Consumption by Its IBOs, and the Extent to Which IBO Compensation is Funded by Purchases for Self-Consumption, is Irrelevant to Whether a Multi-Level Marketing Organization is an Illegal Pyramid. ...................................................................................................2

   C.   Case Law and the F.T.C. Support TEAM's Position that MLMs are Pyramid Schemes if Distributor Compensation is Based Primarily on Self-Consumption, Rather than from Retail Sales to Non-Distributors. ...............................................4

III. QUIXTAR'S OWN ADMISSIONS CONTINUE TO DEMONSTRATE THAT IT WAS AN ILLEGAL PYRAMID SCHEME..........................................................6

   A.   Quixtar Does Require IBOs to Pay to Join. ......................................................6

   B.   Quixtar's Admissions Prove that ███████████████████████████ ...........6

   C.   ████████████████████████████████████████████████████ ......10

   D.   ████████████████████████████████████████████████████ ......12

   E.   ████████████████████████████████████████████████████ ......14

   F.   ████████████████████████████████████████████████████ ......16

IV.  CONCLUSION ...........................................................................................................17

**REDACTED**

i

1

2

# INDEX OF AUTHORITIES

3  **Cases**

*Amway Corp. v. Proctor & Gamble Co.*, 2001 U.S. Dist. LEXIS 14455
(W.D. Mich. Sept. 14, 2001), *aff'd* 346 F.3d 180 (6th Cir. 2003) ..............................4, 17

*Banks v. United States*, 78 Fed. Cl. 603 (2007)............................................................................9

*Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004), *overruled on other grounds*
*Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc) ........................................9

*Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir. 1980)..................................................................9

*Concord Boat Corp. v. Brunswick Corp.*, 1998 U.S. Dist LEXIS 14563
(E.D. Ark. Apr. 11, 1998) ................................................................................................8

*Drexler v. Tyrrell*, 15 Nev. 114 (1880) ..........................................................................................2

*Flanagan v. Allstate Ins. Co.*, 2008 U.S. Dist. LEXIS 89744 (N.D. Ill. May 21, 2008)..............8

*FTC v. Equinox Int'l Corp.*, 1999 U.S. Dist. LEXIS 19866 (D. Nev. Sept. 14, 1999)..................3

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) ........................................................................11

*Horvath v. Rimtec Corp.*, 102 F. Supp. 2d 219 (D.N.J. 2000)......................................................9

*In re Koscot*, 86 F.T.C. 1106, 1975 FTC LEXIS 24 (1975) ....................................................3, 6

*In the Matter of Amway Corp.*, 93 F.T.C. 618, 1979 FTC LEXIS 390 (1979)......................3, 4, 6

*Marceau v. IBEW Local 1269*, 618 F. Supp. 2d 1127 (D. Ariz. 2009) .........................................9

*Meek v. Wilson*, 283 Mich. 679, 278 N.W.2d 731 (1938) .............................................................2

*Nat'l Communs. Ass'n v. AT&T*, 1998 U.S. Dist. LEXIS 3198 (S.D.N.Y. Mar. 16, 1998) ...........8

*Neuman v. Rivers*, 125 F.3d 315 (6th Cir. 1997).........................................................................9

*O'Neal v. Esty*, 637 F.2d. 846 (2d Cir. 1980) ..............................................................................9

*People v. Dynasty Syst. Corp.*, 471 N.E.2d 236 (Ill. App. 1984)..............................................3, 6

*Pilgrim v. Trustees of Tufts Coll.*, 118 F.3d 864 (1st Cir. 1997).................................................9

*Pokorny v. Quixtar*, 601 F.3d 987 (9th Cir. 2010) ......................................................................16

*Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292 (9th Cir. 1983)...........................9

*Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218 (2d Cir. 1999)........................................................9

*Schrader v. State*, 517 A.2d 1139 (Md. App. 1986) ..................................................................3, 6

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

ii

*Sea-Land Serv. v. Lozen Int'l, LLC,* 285 F.3d 808 (9th Cir. 2002) ........................................ 9

*State v. Membership Marketing,* 766 S.W.2d 654 (Mo. App. 1989) .................................... 3

*United States v. Carrillo,* 16 F.3d 1046 (9th Cir. 1994) ..................................................... 8

*United States v. Gold Unlimited., Inc.,* 177 F.3d 472 (6th Cir. 1999) .................................. 3

*United States v. Ospina,* 739 F.2d 448 (9th Cir. 1984) ......................................................... 8

*Webster v. Omnitrition Int'l,* 79 F.3d 776, 783 (9th Cir. 1996) .......................... 3, 6, 12, 13

*Wright-Simmons v. City of Oklahoma City,* 155 F.3d 1264 (10th Cir. 1998) ...................... 9

## Statutes

Mich. Comp. Laws § 445.1528(2) ...................................................................................... 2

Nev. Rev. Stat. § 598.100(1) ............................................................................................. 3

Nev. Rev. Stat. § 598.120 ................................................................................................. 2

## Other Authorities

Merriam Webster Online Dictionary ................................................................................... 5

Michigan's Attorney General, The $100,000 Pyramid Scheme -- Multi-Level Marketing
   or Illegal Pyramid Scheme (February 2009) ................................................................. 7

## Rules

F.R.E. 801(d)(2)(B) .......................................................................................................... 8

F.R.E. 801(d)(2)(C) ....................................................................................................... 8, 9

F.R.E. 801(d)(2)(D) .......................................................................................................... 8

F.R.E. 803(6) ..................................................................................................................... 8

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV 89504-0281   Fax: (775) 786-1177
Tel: (775) 786-5000

## I.    INTRODUCTION

Quixtar's selective and partial citation to facts and the law in its Opposition ("Opp.") does not avoid a finding that Quixtar was an illegal pyramid scheme.  Defendants (collectively "TEAM") contend that Quixtar's contracts with its Independent Business Owners ("IBOs")—on which Quixtar has based many of its claims—are unenforceable because Quixtar was an illegal pyramid scheme.  Partial summary judgment is thus appropriate for Counts 2–5 to the extent that they depend upon those contracts and their terms.

Quixtar's Opposition largely ignores admissions in the many Quixtar documents cited by TEAM which acknowledge that

Instead, Quixtar hedges its bets by first denying TEAM's assertions but then arguing that even if TEAM's assertions are correct, it is not a pyramid.  Quixtar's obfuscation, avoidance, and sleight of hand cannot create the genuine issue of material fact required to avoid partial summary judgment in TEAM's favor.

## II.   LEGAL STANDARDS[1]

### A.    Illegal Contracts are Unenforceable Under Both Michigan and Nevada Law.

While pyramid scheme participants are specifically allowed to void their contracts with illegal pyramids, as noted by Quixtar (Opp., pp. 1–2), both Michigan and Nevada law make it

[1] In its Response to Quixtar's Motion for Partial Summary Judgment on Defendants' Affirmative Defense That Quixtar's Contracts and Contractual Provisions with IBOs are Unenforceable/Illegal, TEAM addresses Quixtar's erroneous arguments that: (a) TEAM's motion is premised on a legally deficient affirmative defense; and (b) TEAM only raised Quixtar's status as an illegal pyramid as an affirmative defense to the tortious interference alleged in Counts 3–4. Opp., pp. 1–3.  TEAM incorporates those arguments here.

**REDACTED**

1

clear that contracts fostering illegality are unenforceable.  TEAM Memo, p. 3, n. 1, *Meek v. Wilson*, 283 Mich. 679, 688, 278 N.W.2d 731 (1938); *Drexler v. Tyrrell*, 15 Nev. 114, 131–32 (1880).  This is so irrespective of Michigan or Nevada statutes that also allow pyramid scheme participants to void their contracts.  Mich. Comp. Laws § 445.1528(2); Nev. Rev. Stat. § 598.120.  Thus, TEAM may raise the pyramid scheme issue to defend against Quixtar's contract-related claims.[2]

> **B.  Quixtar Incorrectly Argues that the Amount of Self-Consumption by Its IBOs, and the Extent to Which IBO Compensation is Funded by Purchases for Self-Consumption, is Irrelevant to Whether a Multi-Level Marketing Organization is an Illegal Pyramid.**

At the core of Quixtar's alleged "legal standard" is the incorrect assertion that the amount of "self-consumption" by its IBOs, and the extent to which IBO compensation is funded by such sales, is irrelevant to determining whether it is an illegal pyramid scheme.  Opp., pp. 5–16.  That, in turn, is based on its false assertion that such self-consumption purchases by IBOs qualify as sales to "ultimate users," as that term is used by the F.T.C. and the courts.  *Id.*

Underlying pyramid scheme case law is a concern that innocent and earnest entrepreneurs will be fooled into joining an organization in which distributors cannot really earn money retailing products to outsiders, but rather, mainly earn bonuses by self-consuming the organization's often overpriced products and recruiting others to do the same.  That is why the Ninth Circuit, the Sixth Circuit, and this District Court have all ruled that self-consumption purchases by distributors and their downlines do not qualify as sales to "ultimate users" under the *Koscot* test.  *Webster v.*

---

[2] Team asserted Quixtar's status as an illegal pyramid as an affirmative defense to Counts 2–5 to the extent that those Counts depended upon the provisions of Quixtar's IBO contracts, and not just Counts 3–4. Dkt. No. 215, Aff. Defs. 3–4.

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

*Omnitrition Int'l*, 79 F.3d 776, 783 (9th Cir. 1996);[3] *United States v. Gold Unlimited., Inc.*, 177

F.3d 472 (6th Cir. 1999); *FTC v. Equinox Int'l Corp.*, 1999 U.S. Dist. LEXIS 19866, *18–24 (D.

Nev. Sept. 14, 1999).[4]   State courts have reached the same conclusion.  *State v. Membership*

*Marketing*, 766 S.W.2d 654, 659 (Mo. App. 1989); *People v. Dynasty Syst. Corp.*, 471 N.E.2d

236, 241 (Ill. App. 1984); *Schrader v. State*, 517 A.2d 1139, 1145–46 (Md. App. 1986).  Further,

in finding that Amway was not a pyramid scheme in 1979, the F.T.C. focused on how distributors

retailed reasonably priced products to non-distributors and how Amway's retailing rules actually

encouraged retailing. TEAM Memo, p. 17.

　　　In arguing that the amount of IBO retail sales should not be a consideration, Quixtar

misstates or selectively quotes from *In the Matter of Amway Corp.*, 93 F.T.C. 618, 1979 FTC

LEXIS 390 (1979):

•　　While the A.L.J. and F.T.C. did note that "much" of Amway's sales to distributors were

---

[3] Quixtar and other MLM counsel accept this interpretation of *Omnitrition*.  Quixtar's
Chief Legal Officer, Sharon Grider, wrote that sales to non-participants was a "fundamental
requirement" of pyramid scheme laws, and that *Omnitrition* required that IBO bonuses be paid
only from sales to non-participants. Ex. 86 at CA003072; *see also* Ex. 87; Ex. 88; Ex. 135.

[4] While *Koscot* did not specifically define "ultimate users," it is clear that self-consumption
purchases by distributors are not sales to "ultimate users" from the many references which
distinguish the lack of retail sales from wholesale distributor purchases, the F.T.C.'s concern
about distributors "selling" cosmetics to themselves and their spouses, and the Final Order only
legitimizing compensation derived from "actually consummated *sales . . . to persons who are not
participants in the plan or program*".  *In re Koscot*, 86 F.T.C. 1106, 1975 FTC LEXIS 24, *63–
67, ¶¶ 57–64; *71–72, ¶ 75; *76, ¶ 83; *79–80, ¶ 86; *98–100, ¶¶ 120–23; *178–79, Final Order,
§II(2) (1975).

　　　The Sixth Circuit identified the Michigan and Nevada pyramid scheme statutes as
resembling *Koscot* in that they legitimize only "compensation based 'solely' or 'exclusively' on
sales rather than on recruiting."  *Gold Unlimited*, 177 F.3d at 483. Nev. Rev. Stat. § 598.100(1)
expressly legitimizes only compensation derived by sales to non-distributors.  Michigan's statute
remains unchanged 　　　　　　　　　　　　　　　Ex. 137. Michigan's Attorney General
still advises:   "Commissions should only be paid on the sale of goods or services to *non-
participant end-user consumers*," 　　　　　　　　　　　　　　　.   Ex. 9
(emphasis added); Ex. 137.

**REDACTED**

3

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1   consumed by distributors (Opp., pp. 5–6), neither he nor the F.T.C. quantified the amount

2   of such self-consumption or found that such purchases or the bonuses they funded
    exceeded those involving actual retail sales.[5]

3   •   The F.T.C. did *not* say that Amway's rules "discouraged inventory loading by requiring

4       that 70% of the products purchased by an IBO were to be sold *or consumed*," as urged by
        Quixtar. Opp., p. 14 (Citing *57, Finding 73). Rather, he found: "To ensure that

5       distributors do not attempt to secure the performance bonus *solely on the basis of*

6       *purchases*, Amway requires that, to receive a performance bonus, distributors must *resell*
        at least 70% of the products they have purchased each month." *Id.* (Emphasis added).

7       Thus, the A.L.J. found that Amway distributors *could not* earn bonuses unless they self-
        consumed *less than 30%* of their purchases.

8
    •   In fact, in finding that Amway was not a pyramid scheme, the F.T.C. stated: "The Amway
9       system is based on *retail sales to consumers*," noting that its rules made "product sales a
        precondition to receiving the performance bonus" and required "that products be sold to
10      consumers." *Id.* at *170 (Emphasis added).

11  Thus, Quixtar wrongly relies upon the *Amway* decision in arguing that the amount of self-

12  consumption versus retail selling is irrelevant in determining Quixtar's status as a pyramid

13  scheme.[6] The *Amway* decision firmly supports the materiality of that inquiry.

14          **C.   Case Law and the F.T.C. Support TEAM's Position that MLMs are Pyramid**
15               **Schemes if Distributor Compensation is Based Primarily on Self-**
                 **Consumption, Rather than from Retail Sales to Non-Distributors.**
16
            Contrary to Quixtar's assertion, identifying a pyramid scheme as an MLM that "primarily"
17
    pays distributors from distributors' self-consumption purchases rather than from retail sales to
18
    non-distributors is not a new or unsupported test. Opp., p. 5. Quixtar ignores portions of *Amway*
19
    *Corp. v. Proctor & Gamble Co.*, 2001 U.S. Dist. LEXIS 14455, *36 (W.D. Mich. Sept. 14,
20
21  2001), *aff'd* 346 F.3d 180 (6th Cir. 2003)—which (1) explained that the "focus of a pyramid

22  scheme is to recruit more people into the group, rather than on *retail sales*;" and (2) defined a

23

24
            [5] Neither the A.L.J. nor the F.T.C. quantified distributor self-consumption beyond
25  identifying 15 distributors who consumed $25 to $150 of Amway products each month. *In the*
26  *Matter of Amway Corp.*, 1979 FTC LEXIS at *95, 179–80, Finding 137.

27          [6] As noted in TEAM's initial brief, both Amway/Quixtar and the law on pyramid schemes
    have evolved in the 30+ years since the F.T.C.'s *Amway* decision. TEAM Memo, pp. 16–18.
28

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

pyramid scheme as "one in which the profits of a few at the 'top' . . . are made *primarily* from *those below them within the organization,* rather than from *sales to persons outside the organization.*" (Emphasis added). "Primarily" means "for the most part" or "chiefly." Merriam Webster Dictionary at http://www.merriam-webster.com/dictionary/ primarily. The comments in the *Amway v. P&G* case are consistent with the test enunciated by the F.T.C.'s chief economist, Peter Vander Nat, and cited in TEAM's initial brief. *See* TEAM Memo, pp. 4–5.[7]   In October 2009, the F.T.C. identified a pyramid scheme as an MLM where "the money made depend[s] mostly on selling to other distributors than on sales of the product to the public." Ex. 90. Thus, TEAM's position is supported by case law and the F.T.C.'s most recent pronouncement.

Quixtar's arguments that TEAM's position is inconsistent with industry standards are wrong or irrelevant. Opp., pp. 9–11. First, the opinion of the Direct Selling Association ("DSA") is not binding on this Court. Second, Quixtar did not show that the DSA adopted *any* ethical rule legitimizing MLMs whose distributors are *primarily* compensated from self-consumption purchases by themselves and their downlines. In fact, the DSA's pro-self-consumption arguments in *Omnitrition,* which mirror those of Quixtar, were rejected by the Ninth Circuit. Ex. 87. Quixtar's assertion that "the entire MLM industry could be shut down by illegal pyramid claims" if TEAM's standard was adopted (Opp., p. 10) is wildly inaccurate, as a 2008 DSA survey showed that only 19% of distributor orders among its members were for personal use (             ). Ex. 91, p. 72. Regardless of the impact on the MLM industry, the law must be applied as written: industry standards clearly cannot trump case law or the F.T.C.

Quixtar's economic arguments against TEAM's legal position are similarly flawed. Opp.,

---

[7] Quixtar's expert, Dr. Coughlan, wrote approvingly that Vander Nat's test established "a clear distinction . . . between legitimate direct selling organizations and illegitimate pyramid schemes." Ex. 89, pp. 458, n. 26, 476.

**REDACTED**

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1  pp. 11–12.  The "primarily funded" bright line standard is not vague.  *Dynasty Sys. Corp.*, 471

2  N.E.2d at 241–42; *Schrader*, 517 A.2d at 1145–47.  It allows for ample self-consumption at

3  "wholesale" prices for actual family use and for distributors "experiencing the product" in order to

4  intelligently demonstrate and sell Quixtar's products.

6  **III.   QUIXTAR'S OWN ADMISSIONS CONTINUE TO DEMONSTRATE THAT IT WAS AN ILLEGAL PYRAMID SCHEME.**

7  Quixtar concedes that *Omnitrition* requires an analysis of "the totality of facts" under the

8  *Koscot* test (Opp., p. 15), but then separately analyzes a few of the trees while ignoring the forest.

9  Quixtar's own admissions demonstrate that there is no doubt that it was an illegal pyramid scheme

10  by 2007.  Thus, summary judgment should be granted.

   **A.   Quixtar Does Require IBOs to Pay to Join.**

   Quixtar argues that it does not require significant registration fees, pay IBOs for

   recruiting, or require IBOs to purchase products.  However, Quixtar concedes that IBOs must

   pay to join Quixtar and earn the right to buy products for their own use, sell Quixtar products,

   and earn bonuses.  Opp., p. 17.  The "payment of money" element in the *Koscot* test need not

   involve substantial initial investments.  *Omnitrition*, 79 F.3d at 782.  As shown in TEAM's initial

   brief,

   **B.   Quixtar's Admissions Prove that**

   "Price is the 'central nervous system of the economy.'"  *In the Matter of Amway Corp.*,

   1979 FTC LEXIS at *147.  Quixtar's previously-cited admissions prove that

   TEAM Memo, pp. 6–10.

   Quixtar's contrary arguments do not create a genuine issue of material fact on this issue.  Opp.,

**REDACTED**

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1  pp. 27–30.

2  Despite Quixtar's contention (Opp., p. 27), the price of its products is relevant to a

3  pyramid scheme analysis. Michigan's Attorney General advises consumers to avoid joining a

4  "pyramid scheme disguised as a multi-level marketing opportunity" by "[m]ak[ing] sure the

5  product or service offered by the company is something you would buy without the income

6  opportunity and the product or service is competitively priced," because "*[i]llegal pyramid*

7  *schemes often sell products at prices well above retail* . . ." Ex. 9 (emphasis added). F.T.C.

8  General Counsel, Debra Valentine, stated in a 1998 "Pyramid Schemes" speech to the I.M.F.:

9
> If a plan purports to sell a product or service, *check to see whether its price is
> inflated . . . or whether members make most "sales" to other members rather than
> the general public. If any of these conditions exist, the purported "sale" of the
> product or service may just mask a pyramid scheme* that promotes an endless
> chain of recruiting and inventory loading.

Ex. 9, p. 6, Tip #3 (emphasis added). Thus, this Court must analyze Quixtar's product pricing.

In its Opposition, Quixtar failed to raise a factual issue regarding whether its products were

overpriced and non-retailable. Quixtar did not, for instance, adequately explain away the many

Quixtar documents ███████████████████████████████████

███████████ Exs. 5, 10–12, 14–21, 23, 26.

Quixtar also wrongly asserted that various reports prepared by its consultants from

McKinsey & Co. ("McKinsey"), documenting, *inter alia,* ███████████████

█████, were inadmissible hearsay.[8] McKinsey was retained by Quixtar to ████

───────────────

[8] In its initial brief, TEAM cited several McKinsey PowerPoint presentations which, *inter alia*, reported that ██████████████████████████████████████████

██████████████████████████ Exs. 15, 17, 22, 23, 25, 38, 44, 50, 52, 54, 58, 76, 77.

7

**REDACTED**

████████████████████████████████████████████████████

████████████████████████████████████████ TEAM Memo, p. 7, n. 5;

Exs. 94–95; Ex. 100 at QAW0295940; Ex. 106 at QAW0104170; Ex. 107; Opp. Ex. 3, p. 11, ¶ 40.

      Quixtar wrongly relies entirely on the unpublished *Flanagan v. Allstate Ins. Co.*, 2008 U.S. Dist. LEXIS 89744 (N.D. Ill. May 21, 2008) (Opp., p. 22, n. 19), which addressed the admissibility of McKinsey documents as agent admissions under F.R.E. 801(d)(2)(D) and business records under F.R.E. 803(6). However, two other courts have reached the opposite conclusion regarding McKinsey documents. *Nat'l Communs. Ass'n v. AT&T*, 1998 U.S. Dist. LEXIS 3198, *128–136 (S.D.N.Y. Mar. 16, 1998); *Concord Boat Corp. v. Brunswick Corp.*, 1998 U.S. Dist LEXIS 14563, *2–3 (E.D. Ark. Apr. 11, 1998). The McKinsey documents are also admissible as adoptive admissions under F.R.E. 801(d)(2)(B) because of Quixtar's comments about or use of them,[9] and/or as authorized statements under F.R.E. 801(d)(2)(C) because Quixtar authorized

---

[9] McKinsey findings were included in or used as Quixtar's own presentations, were recognized as accurate and/or praised by Quixtar, and were relied upon by Quixtar in its decision-making. Ex. 15; Ex. 17; Ex. 20 at QAW0314953, 957; Ex. 21 at QAW0318156; Ex. 23 (presentation for which Ex. 77 is an Appendix); Ex. 34; Ex. 37 at QAW0295806; Ex. 70 at QAW0300964; Ex. 96 at QAW0203451 (Same as Ex. 38 with transmittal email); Ex. 97 at QAW0280319; Ex. 98; Ex. 99 (Same attachment as in Ex. 50); Ex. 100; Ex. 101, Ex. 102 at QAW0296984 ("

████████████████████████████████████████ "); Ex. 103 (same as Ex.

25, with transmittal email); Ex. 104 ("

████████████████████████████████ "); Ex. 105.

      Thus, the McKinsey presentations are admissible under F.R.E. 801(d)(2)(B) because Quixtar adopted the documents and analyses by using them, incorporating their findings into its own documents, making presentations with them, recommending changes to portions of them, praising them, and/or acting on them. *United States v. Ospina*, 739 F.2d 448, 451 (9th Cir. 1984); *United States v. Carrillo*, 16 F.3d 1046, 1048–49 (9th Cir. 1994); *Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 821–22 (9th Cir. 2002); *Neuman v. Rivers*, 125 F.3d 315, 320 (6th Cir. 1997); *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 238–39 (2d Cir. 1999); *Pilgrim v. Trustees of Tufts Coll.*, 118 F.3d 864, 870 (1st Cir. 1997); *Wright-Simmons v. City of Oklahoma*

**REDACTED**

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1  McKinsey to make statements on the subject matters in their presentations.[10]

2      Quixtar primarily counters all that evidence with irrelevancies and hearsay. Opp., pp. 27–

3  30. It relies, *inter alia*, on (1) █████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████—more than a year after

6  Quixtar terminated Woodward, Brady, and other TEAM-related IBOs; (2) ███████████

7  ████████████████████████████████████████████ and (4) selective

8  quotes from an █████████████████████████████████████████████████████

9  ████████████████████████████████████████████████ Opp. Ex. 4,

10 pp. 46–51, Opp. Ex. 46; Ex. 93, pp. 158–61. The *only* TEAM exhibit referenced by Quixtar

11 (Opp., p. 30) favors TEAM because it shows that ███████████████████████████████

12 ██████████████████████████████████████

13 ███████████████████ Ex. 23 at QAW0322662.

14     Other Quixtar documents support TEAM's position. In 2005–2007, ████████████

15 ████████████████████████████████████████████████████████████

16 Ex. 25 at QAW0306007–009; Ex. 108. In October 2006, Quixtar conceded:

17 ████████████████████████████████████████████

18 ██████████████████████████████████████████ " Ex. 104 at QAW0308561. In

19 April 2007, █████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████

22 *City*, 155 F.3d 1264, 1268–69 (10th Cir. 1998); *Horvath v. Rimtec Corp.*, 102 F. Supp. 2d 219, 223, n. 3 (D.N.J. 2000).

23     [10] Those presentations are admissible under F.R.E. 801(d)(2)(C) since McKinsey was

24 authorized by Quixtar to make statements concerning subjects related to ██████████████
   ████████████████████████████████████████████ *Reid Bros. Logging Co.*

25 *v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306–07 (9th Cir. 1983); *Beck v. Haik*, 377 F.3d 624,

26 638–39 (6th Cir. 2004), *overruled on other grounds Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc); *Collins v. Wayne Corp.*, 621 F.2d 777, 780–82 (5th Cir. 1980); *Marceau v.*

27 *IBEW Local 1269*, 618 F. Supp. 2d 1127, 1142–43 (D. Ariz. 2009); *Banks v. United States*, 78 Fed. Cl. 603, 616–17 (2007); *O'Neal v. Esty*, 637 F.2d 846, 853 (2d Cir. 1980).

28                                                                          **REDACTED**

1    ███████████████████████████████████" Ex. 106 at QAW0104166, 170.   Quixtar

2    acknowledged that ████████████████████████████████████████████████████████

3    ████████████████████████████ Ex. 109 at QAW0152622 (emphasis added).   The

4    ████████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████

6    ████████████—*after* the Woodward/Brady sacking.  Ex. 2; Ex. 136.[11]

7        Quixtar ███████████████████████████████████████████████████████████

8    ████Ex. 19 at QAW0170609; Ex. 69 at QAW173920, 927; Ex. 110.██████████████

9    ████████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████████████

11   ████████████████████████*Compare* Ex. 110, *with* Ex. 17 at QAW0297304; Ex. 22 at

12   QAW0318906; Ex. 23 at QAW0322652, 656, 660; Ex. 77 at QAW0319611, 626–28.[12] ████

13   ████████████████████████████████████████████████████████

14      **C.**  ██████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████

19   addition to the documents cited in TEAM's initial brief, none of which was really addressed by

20   Quixtar, other admissions by Quixtar show that it knew █████████████████████

21   ████████████████████████████████████████████ Ex. 113 at QAW0202504;

22   Ex. 114 at QAW0304368.  Quixtar's Managing Director reminded ██████████████

─────────────────────────────────

23      [11] Quixtar's anecdotes about some IBOs who retailed some products (Opp., pp. 26–27,

24   30) are merely a legally insufficient scintilla of evidence not creating a genuine issue of material

25   fact.

26      [12] ████████████████████████████████████████████████████████████████

27   ███████████████████████████████ Ex. 23 at QAW0322662; Ex. 111

28   at QAW0111036 (QAW0111036–040); Ex. 112.

**REDACTED**

Ex. 115 at QAW00023118.

Quixtar complains that the analysis by TEAM's expert, ███████████
████████████████ (TEAM Memo, pp. 12–13), was flawed because
█████████ Opp., pp. 30–34. ███████████████████████

████████████ *Id.* Quixtar's personnel knew
███████████████████ Ex. 17 at QAW0297305; Ex. 37 at
QAW0295810. ███████████████████████████████████
████████████████ Ex. 116, p. 172. Thus, Quixtar
simply speculates that ████████████████████████████
████████████ TEAM Memo, p. 10, n. 7, Ex. 117, pp. 40–44.[13]
Quixtar's bald speculative assertions cannot preclude summary judgment. *FTC v. Stefanchik*, 559
F.3d 924, 929, ns. 9–10 (9th Cir. 2009).

Quixtar's own admissions about █████████ condemn it in this case. Quixtar
cautioned TEAM that ██████████████████████████████
███████████████████████████████████
█████████ Ex. 64 at QAW0046501. Quixtar's Rule 30(b)(6) representative testified that
███████████████████████████████ Ex. 67, p. 126.
The admitted ████████████████████ and paucity of █████████████
demonstrates that even by Quixtar's own criteria, it had become a pyramid scheme by 2007.

_____

[13] Quixtar pointed to
███████ Opp., p. 31. ███████████████████████ Ex. 2;
Ex. 136. ████████████████████████
███████████████ Ex. 46; Ex. 61(G).

**REDACTED**

**D.** ████████████████████████████████████████████████████████

Quixtar's rules, and the way they are enforced, must both discourage inventory loading and encourage retail sales for Quixtar to avoid being a pyramid scheme.  TEAM Memo, p. 18; *Omnitrition*, 79 F.3d at 783.  TEAM produced ample evidence that Quixtar's rules and their enforcement failed to meet this legal standard.  TEAM Memo, pp. 18–20.  In response, Quixtar wrongly contends that it ████████████████████████████████████████████████████████████████████████████████████████████████ Opp., pp. 24–26.  It is obvious from █████████████████████████████████████████████████████████ business, that Quixtar's rules and/or their enforcement did not meet legal requirements.

While Quixtar complains that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ This was the result of ████████████████████████████████████████████████████████████████████ TEAM Memo, p. 19, n. 12.  In fact, Quixtar admitted that ███████████████████████████████████████████ ██████████ Ex. 67, pp. 222–23.  Thus, ██████████ did not encourage retail sales.[14]

Rule 4.18 also failed to prevent inventory loading, which "occurs when distributors make the minimum required purchases to receive recruitment-based bonuses without reselling the products to consumers."  *Omnitrition*, 79 F.3d at 783, n. 3. ████████████████████████████

---

[14] Quixtar contends that █████████████████████████████ Opp., p. 26. ██████████████ Ex. 2; Ex. 136.  Before then, █████████████████████████████████████████████████████████ Ex. 23 at QAW0322668–683; Ex. 35 at QAW0223597, Ex. 37 at QAW0295810–814, Ex. 38 at QAW0203487, 490; Ex. 60 at QAW0306916–918; Ex. 72; Ex. 136.  In fact, ████████████████ ████████████████████████████████████ Ex. 35 at QAW0223597.

**REDACTED**

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

(Ex. 125 at QAW0108130), Quixtar knew ███████████████████

██████████████████████ Ex. 53 at QAW0241066; Ex. 126 at QAW0096036–37, 044–046; Ex.

127 at QAW0295023 ███████████████████████████████████████████████████████

████████████████████████████████████ Ex. 40 at QAW0306830.

Rule 4.22 did not encourage retail sales because of ███████████████████████

███████ TEAM Memo, pp. 18–19. ███████████████████████████████████████

█████████████████████████████████████████████████████████████ Ex. 76 at

QAW0319918. Quixtar admitted that, █████████████████████████████████████

███████████████████████████ Ex. 121 at QAW0096869.[15] Thus, Quixtar

██████████████████████████████████████ Ex. 3, pp. 19–20, Resp. 13;

Ex. 122, pp. 58–61. In other words, █████████████████████████████████████

████████████████████████████████████████████████████████████████████

While Quixtar did provide ███████████████████████████████████████(Ex.

45 at QAW093012—Product Returns; Ex. 3, p. 27, Supp. Resp. 21, Ex. 123), it did not produce

*any* documentation to TEAM or its experts of the number or amounts of refunds that IBOs

sought from their upline or Quixtar, or the number or amount of such returns that were granted or

denied, under Quixtar's "buy-back" rule. Ex. 84, pp. 154–62; Ex. 124, pp. 14, 200–03. Thus,

---

[15] ██████████████████████████████████████████████(Opp., p. 25), ████████

██████████████████████████ Ex. 76 at QAW0319919.

**REDACTED**

1  there was no way to determine whether or not Rule 5.3.6 actually deterred inventory loading.[16]

2  **E.** ████████████████████████████████████████████

3  ███████████████████████████████████████████████████

4  ███████████████████████████████████████████████████

5  ███████████████████████████████████████████████████

6  important in a pyramid scheme analysis.████████████████

7  ████████████████████ Ex. 23 at QAW0322648; Ex. 41 at QAW0315552; Ex. 53 at

8  QAW0241063; Ex. 118 at QAW0310804.[17]

9  ████████████████████████

10  ███████████████████████████ Ex. 119 at QAW0317429.

11  ████████████████████████████ Ex. 120 at QAW0226910.

12  █████████████████ Ex. 53 at QAW0241058 ("█

13  ██████████████████████████ Ex. 54 at QAW0326655 ("

14  ████████████████████████████████████████████

15  ███████████████████████████████████████████████████

16  ███████████████████████████████████████████████████

17  ███████████████████████████████████████████████████

18  ████████████████ Ex. 53 at QAW0241058; Ex. 55 at QAW0312025; Ex. 59; Ex. 68

19  at QAW0231308.   This contrasted with Amway's increasing number and better retention of

20  distributors, and rising distributor income, in 1979.  TEAM Memo, p. 17.

21       Quixtar's use of Jon Voskuil's deposition testimony to contest TEAM assertions

22  regarding █████████████████████████████ Opp., pp. 20–21, n. 17;

23

24  ─────────────────────────────────────────────

[16] Equinox had more information about its "buy-back" policy than Quixtar, but this

25  District Court found it so insufficient that an adverse inference was warranted. *Equinox*, 1999

U.S. Dist LEXIS at *23.

26

[17] While Quixtar claims that most distributors join MLMs to buy discounted products

27  (Opp., p. 21, n. 18), a source cited by Quixtar (Opp. Ex. 4, p. 7, n. 17) showed that █████

28  ████████████████████████████

REDACTED

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

1    Opp. Ex. 1, pp. 20–21. Mr. Voskuil testified extensively about his Exhibit 17. Ex. 128, pp. 87–

2    107; Ex. 129.

3

4

5    Ex. 129 at QAW0297615. Slide #3 was labeled

6

7

8                                                                                                    *Id.* at

9    QAW0297620.    During his deposition, Mr. Voskuil did not dispute the accuracy of the

10   information on Slide #3, but merely expressed                                         . Ex. 128,

11   pp. 98–99. An iteration of that same slide,

12

13                                                                     Ex. 99 at QAW0295763,

14   768.   Thus, Quixtar adopted that analysis and the information in it. F.R.E. 801(d)(2)(B). *See*

15   *supra* note 9.

16                                                                     Opp., pp. 20–21, n. 17;

17   Opp. Ex. 18)

18

19

20                                                        Other Quixtar documents confirmed the

21                                          Ex. 49; Ex. 82 at QAW0137114–117, QAW0128313–

22   316, QAW0317916–917.

23

24

25          Ex. 124, pp. 139–40.

26   //
27   //
     //
28   //

                                                                                        **REDACTED**

                                            15

F.

TEAM cited many evidentiary admissions which show that

TEAM Memo, pp. 14–16. Quixtar disregarded those numerous admissions, and claimed that Opp., pp. 21–23.

However, the evidence shows

Quixtar cannot dispute that in June 2007,

Ex. 68 at QAW0231307–308.

*Id.* at QAW0231308–309.

Thus, Quixtar's plans

**REDACTED**

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV  89504-0281
Tel: (775) 786-5000     Fax: (775) 786-1177

1

2

3

4

5    ██████████████████████████████████ More than a year

6    after Quixtar sacked Woodward and Brady, that ██████████

7    Ex. 134, p. 173. Thus, ███████████████████████ was "too little,

8    ██████ for this case, and it is a tacit admission that Quixtar was a pyramid scheme by 2007.

9    ## IV.    CONCLUSION

10           TEAM clearly demonstrated through Quixtar's own admissions that it had become an

11   illegal pyramid scheme by 2007. ██████████████████████████████

12

13

14

15   ██████████████████████████████████ In its Opposition, Quixtar

16   failed to meaningfully address its numerous admissions, never quantified retailing by its IBOs, and

17   instead relied on misstatements, obfuscation, avoidance, and sleight of hand.   Quixtar has not

18   raised a genuine issue of material fact, because even when the evidence is viewed in the light most

19   favorable to Quixtar, there is no dispute that (1) the "focus of [Quixtar was] to recruit more

20   people into the group, rather than on retail sales;" and (2) "the profits of a few at the 'top' . . .

21   [were] made primarily from those below them within the organization, rather than from sales to

22   persons outside the organization."   This meets the definition in *Amway v. P&G, supra.*

23           Accordingly, this Court should find that Quixtar was an illegal pyramid, hold that its IBO

24   contracts were void and unenforceable, and grant summary judgment in TEAM's favor on Counts

25   2–5 to the extent that they depend on those contracts and their terms.

26

27

28

DATED this 2nd day of September, 2010.

Respectfully submitted,

JONES VARGAS

By: /s/ John P. Desmond
John P. Desmond, Nevada Bar No. 5618
100 West Liberty Street, 12th Floor
Reno, Nevada 89501
Telephone: (775) 786-5000
Facsimile: (775) 786-1122
Email: jpd@jonesvargas.com

Sharon M. Woods (Admitted *Pro Hac Vice*)
Morley Witus (Admitted *Pro Hac Vice*)
Daniel J. LaCombe (Admitted *Pro Hac Vice*)
BARRIS, SOTT, DENN & DRIKER, P.L.L.C.
211 West Fort Street, 15th Floor
Detroit, Michigan 48226
Telephone: (313) 965-9725
Facsimile: (313) 965-2493
Email: swoods@bsdd.com, mwitus@bsdd.com,
         dlacombe@bsdd.com

William A. Sankbeil (P19882)
(Admitted *Pro Hac Vice*)
KERR RUSSELL & WEBER PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
Facsimile: (313) 961-0388
Email: was@krwlaw.com

*Attorneys for Defendants*

396515v2

18

## CERTIFICATE OF SERVICE

I certify that I am an employee of JONES VARGAS, and that on this date, pursuant to FRCP 5(b), I am serving a true copy of the **DEFENDANTS' REPLY TO OPPOSITION BY QUIXTAR INC. TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ILLEGAL PYRAMID ISSUE [REDACTED]** on the party(s) set forth below by:

_____ Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage prepaid, following ordinary business practices

_____ Certified Mail, Return Receipt Requested

_____ Via Facsimile (Fax)

_____ Placing an original or true copy thereof in a sealed envelope and causing the same to be personally Hand Delivered

_____ Federal Express (or other overnight delivery)

__XX__ By Notice of Electronic Filing via the CM/ECF system as maintained by the Court Clerk's Office

_____ Via E-Mail

as follows:

John J Frankovich jfrankovich@mcdonaldcarano.com, khenley@mcdonaldcarano.com
Miranda M Du mdu@mcdonaldcarano.com, kryd@mcdonaldcarano.com
James M. Schurz jschurz@mofo.com, cvetesi@mofo.com, lsangalang@mofo.com
Sharon M. Woods swoods@bsdd.com, mtortomose@bsdd.com
Cedric C. Chao cchao@mofo.com
William L. Stern wstern@mofo.com
Andrea B. Hasegawa ahasegawa@mofo.com
Morley Witus mwitus@bsdd.com, smcfadden@bsdd.com
Edward J. Bardelli ebardelli@wnj.com
Brian Masternak bmasternak@wnj.com
James R Sobieraj jrs@brinkshofer.com, federalcourts@brinkshofer.com
Dominic P Zanfardino dzanfardino@usebrinks.com
James K. Cleland jcleland@usebrinks.com
Bradley L Smith bsmith@usebrinks.com, bshaw@usebrinks.com, kwatson@usebrinks.com
William A. Sankbeil was@krwlaw.com, cjv@krwlaw.com, cmh@krwlaw.com
Joanne Geha Swanson jgs@krwlaw.com, cjv@krwlaw.com
Ricardo J Lara rjl@krwlaw.com
Daniel J. LaCombe dlacombe@bsdd.com, pdarnell@bsdd.com
Robert G. Pluta rpluta@brinkshofer.com
Somnath Raj Chatterjee schatterjee@mofo.com

19

JONES VARGAS
100 West Liberty Street, Twelfth Floor · P.O. Box 281
Reno, NV 89504-0281   Fax: (775) 786-1177
Tel: (775) 786-5000

1    DATED this 2nd day of September, 2010.

2

3                                     /s/ Cindy S. Grinstead
                                An employee of JONES VARGAS
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28